### DAVID HUFTALIN

*v.*

### CORNELIA R. MISNER.

1. ERROR—*answer must appear if question is assigned for error.* Where the allowing of a certain question to be answered by a witness, is assigned for error, the answer must be preserved in the record, so that it may be seen whether it was of prejudice to the party complaining.

2. SAME—*error in respect to, obviated.* Although the court may err in disallowing a question, yet, if the witness afterwards substantially answers the same, the error will be obviated.

3. EVIDENCE—*question calling for a legal conclusion from a state of facts.* A question to a witness who had previously rented premises, and whose term had expired, whether he was not in possession at the time of an expulsion of the plaintiff, is properly excluded, as calling for a legal conclusion, especially if he had already detailed the facts of the case in relation to his occupancy.

4. SAME—*in mitigation of damages.* In an action of trespass, to entitle the defendant to give in evidence, in mitigation of damages, a provocation, it must have been so recent and immediate as to induce a presumption that the violence done was committed under the immediate influence of the feelings of passion excited by it.

5. In an action of trespass for shooting into a dwelling house in the night time, the defendant can not prove, in mitigation of exemplary damages, the kidnapping and seduction of his daughter by the plaintiff and her husband, done nearly one year before, and subsequent attempts, by the plaintiff's husband, to kidnap the daughter, his attempting to hire persons to assassinate the defendant, and to poison his well, and the writing of insulting letters to the defendant's wife, the husband's acts not being admissible against the wife.

6. The rule in respect to the proof of provocation, in an action for shooting into the plaintiff's house, is the same as in an action for an assault and battery. The general rule is, that the defendant can not give in evidence, in mitigation of damages, the acts and declarations of the plaintiff at a different time, or any antecedent acts which are not fairly to be considered as part of the same transaction, however insulting and provoking they may have been.

7. MARRIED WOMAN—*trespasser can not question her right to land acquired through her husband.* Where a husband conveys real estate to a third party, and such party, on the same day, conveys to the wife of his grantor, whatever may be the rule as to others having rights against the land, it will be treated as the separate property of the wife as against a mere trespasser, and he will not be allowed to question her right to sue for the trespass without her husband.

8. DAMAGES—*whether excessive.* Where the defendant, in company with a large number of other men, went, in the night time, to the plaintiff's dwelling, and blew horns, and fired guns into the air, and, upon the plaintiff's husband firing into the crowd, they fired into the house on all sides, breaking nearly all the glass in the windows, forcing the plaintiff, with her children, to take refuge in the cellar, and afterwards took forcible possession of the house under a certificate of purchase, and

removed the plaintiff's goods into the road: *Held*, that $1100 damages could not be regarded as excessive.

9. CERTIFICATE OF PURCHASE—*confers no title or right before expiration of time for redemption.* A certificate of the purchase of land under execution, confers on the holder no title or interest in the land, especially when the time for redemption has not expired.

WRIT OF ERROR to the Court of Common Pleas of the city of Aurora; the Hon. RICHARD G. MONTONY, Judge, presiding.

This was an action of trespass, by Cornelia R. Misner against David Huftalin. The material facts of the case are stated in the opinion of the court.

Mr. C. J. METZNER, for the plaintiff in error.

Mr. B. F. PARKS, for the defendant in error.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was an action of trespass, the declaration containing two counts: one, for shooting into the house of the plaintiff balls and shot, in the night time; the other, for, at a subsequent time, forcibly expelling her from her house and farm, and taking her crops. The plaintiff recovered a verdict and judgment for $1100.

For the reversal of the judgment errors are assigned, in the admission and rejection of evidence, in the giving and refusing of instructions, and that the damages are excessive.

As the second count was for the expulsion of the plaintiff, and converting to defendant's use the crops *growing* on the premises, it is claimed to be error that the court allowed a witness to answer the question how much some grass seed in the stack was worth. It is enough to say that the record does not show that the question was answered, hence we can not see that any prejudice resulted to the defendant from allowing the question to be answered.

The court allowed a witness to state what was the value of the farm. Whilst that testimony might very properly have been excluded, its admission is not an error of sufficient gravity to affect the judgment.

A question was put to a witness who composed one of the party of persons who went along with the defendant, what they went up to Misner's for; and an objection to the question was sustained. But nevertheless, the witness made answer, that they had no design to shoot Misner, or injure his property or family; that there was no damage done to his house or premises prior to his shooting at the boys. Even if there had been error in disallowing this question, it was substantially answered as above, for all purposes beneficial to the defendant, and this would obviate the error.

The court properly excluded evidence of proceedings in attachment against the plaintiff, and a certificate of purchase of the land by the defendant. The mere certificate of purchase gave to the defendant no title or interest in the land, especially as the time for redemption by the defendant in execution had not run out.

The witness Wyatt had previously rented the farm of Mrs. Misner for one year, and he was asked whether he was not in possession at the time of the alleged expulsion of the plaintiff. The court excluded the question. The witness did testify to the facts that his year had expired, and that he had not moved any thing away; that he had given Misner and wife possession of but one room, which they occupied. This was sufficient, and what the witness should have been confined to—a statement of the. facts. Whether the witness was in possession, was but a legal conclusion from the facts, and the question was properly enough excluded.

But the principal question upon excluded evidence arises on the following:

"The defendant, by his counsel, stated to the court that he proposed to prove that, prior to the alleged shooting, said William Misner and the plaintiff, under the pretense that the

plaintiff was sick, and required some one to help her, coaxed a daughter of the defendant, about fifteen years of age, into their house, for the purpose of seducing her; that while the girl was so there, said Misner did seduce her; that he afterwards took the girl from her father's house, and, by plaintiff's assistance, kidnapped her, run away out of this State, and lived with her some time as man and wife, and then attempted to induce the girl to become an inmate of a house of ill fame; that finally defendant recovered his daughter, and took her to his home; that the plaintiff and said Misner continually attempted to kidnap the girl again, and nearly succeeded in one or two efforts; that to accomplish their design, and get defendant out of the way, the said Misner attempted to hire persons to assassinate the defendant, and also poison his well; that said Misner wrote insulting letters to the defendant's wife; that these facts came to the knowledge of the defendant a short time before the alleged shooting; that said Misner was, at the time, living in an open state of adultery, with Johnny and Molly, with the consent of his wife."

The court held all such facts incompetent, and sustained the objection of the plaintiff to their introduction in evidence.

It is urged that the testimony was admissible in mitigation of exemplary damages. We do not perceive why the same rule should not apply here as in an action for an assault and battery, where it is laid down as the general rule, that the defendant can not give in evidence, in mitigation of damages, the acts and declarations of the plaintiff at a different time, or any antecedent acts which are not fairly to be considered as part of the same transaction, though they may have been ever so insulting or provoking. The provocation, to entitle it to be given in evidence in mitigation of damages, must be so recent and immediate as to induce a presumption that the violence done was committed under the immediate influence of the feelings and passions excited by it. Sedg-

wick on Dam. 563; *Lee* v. *Woolsey,* 19 Johns. 317; *Avery* v. *Ray,* 1 Mass. 12; *Tyson* v. *Booth,* 100 Mass. 260.

Some of the matters attempted to be proved were the sole acts of the husband, and, manifestly, would not be admissible against the wife. The main alleged grievance, that of the asserted seduction, kidnapping and abduction of the daughter, we are satisfied, from what appears in the case, must have occurred and come to the defendant's knowledge more than a year previously, although the statement in the offer is, that the facts came to the knowledge of the defendant a short time before. This personal grievance of the defendant here attempted to be proved, was of a date so remote, that whatever might have been done under its influence, could not have been from the impulse of sudden passion, but must have been an act of deliberate revenge. To this, the law affords no countenance. Besides, it was in evidence that the defendant and his coadjutors did not go to the plaintiff's dwelling for the purpose of committing any violence, and that the acts of violence which they did commit were provoked by their having been first fired upon from plaintiff's house. The provocation for the violence was thus here shown.

Without committing ourselves to the full strictness of the rule held by the above authorities, where the proof offered is merely in mitigation of exemplary damages, we find, in this case, no error in the exclusion of the evidence which was here offered.

The objections to the instructions given and refused, respect principally the plaintiff's right to sue.

It was in proof, that William Misner, the husband of the plaintiff, conveyed the premises in question to one Evans, and that the latter, on the same day, conveyed the same to the plaintiff. The position taken by appellant's counsel is, that this property was not acquired by the wife from a person other than her husband, but that it was acquired from her husband, and therefore, is not her sole and separate property under the law of 1861, in relation to married

women; but that the rights of the husband are as at common law, that he has a life estate in the land, that the possession was in him, and the wife not entitled to bring the suit in her own name. But the wife acquired the land by conveyance from Evans, a person other than her husband; and however it may be as to others having rights with respect to the land, we think that, as against a mere trespasser, the transaction is to be taken as it appears to be from the conveyance, and that a wrongdoer is not to be admitted to show it to be otherwise. This view substantially disposes of the questions arising upon instructions, with the exception of the tenth one, upon the subject of exemplary damages, and, in view of the evidence, we discover no objection to that.

As respects the question of the damages being excessive, the case made by the proof was this: The defendant, in company with twenty-eight or twenty-nine other men, went in the night time to the plaintiff's dwelling house, in which she was residing with her husband and four small children. After their making sundry demonstrations by the blowing of horns, and firing guns into the air, the husband of the plaintiff fired two shots at the crowd, one hitting a boy that was among them. Thereupon the crowd fired into the house, on all sides of it, some twenty-two bullets, and a large quantity of shot besides, badly shattering the house, in the language of the witnesses, with balls and shot, hardly a whole pane of glass being left, the plaintiff and her children being forced to take refuge in the cellar.

Witnesses on one side estimated the damage to the house at $150 to $200, on the other side at $10 to $15.

As to the second trespass, which occurred more than a year afterward, the term of Wyatt, a tenant of the plaintiff, had expired on the 29th of August, 1871, and on the 1st of September, which was Saturday, the plaintiff went and saw Wyatt, and told him she wanted possession of the farm. He assented thereto. She took her goods and things there, and Wyatt assisted in carrying them up stairs. On the 3d of September,

which was Monday, she went again to the house, and found the defendant in possession, and her goods and things were in the road. Defendant has had possession ever since.

The attack upon the dwelling house was a high-handed invasion of the sanctity of a private habitation, in the night time, by an armed mob. It was a contemptuous trampling upon law, and a defiant assertion of the supremacy of brute force.

The jury did not too severely mark the enormous character of the wrong. Their verdict was but a proper vindication of outraged law. As long as, in addition to compensatory damages, verdicts for example's sake are allowable, this one, as regards amount, should not, in our view, be disturbed.

The judgment will be affirmed.

*Judgment affirmed.*