# H. W. LIGHTCAP

## *v.*

# LYDIA BRADLEY.

*Opinion filed October 19, 1900.*

1. JUDICIAL SALES—*certificate of purchase is void after five years from expiration of redemption period.* Under section 30 of the act on judgments, (Rev. Stat. 1874, p. 625,) a certificate of purchase becomes null and void if the holder neglects to take out a deed thereunder within five years from the expiration of the period of redemption.

2. LIMITATIONS—*what proof necessary to enable party to defend under section 6 of the Limitation act.* A defendant in ejectment, in order to establish the defense created by section 6 of the Limitation act, must first prove a paper title which, upon its face, at least purports to convey the premises.

3. SAME—*section 4 of the Limitation act requires proof of a title prima facie good.* Section 4 of the Limitation act requires something more than mere color of title, since the title must be *prima facie* good, and one which courts will enforce unless rebutted or destroyed by evidence of a better title.

4. MORTGAGES—*effect of a mortgage as to its conveying title.* A trust deed in the nature of a mortgage conveys the title as between the mortgagor and mortgagee; but such title is only a qualified one, as security to the creditor during the existence of the debt.

5. SAME—*how mortgage title is regarded at law.* At law a title is regarded as vesting in the mortgagee, but only for the protection of his interests; and if he brings ejectment, the purpose and effect of such action are not to establish or confirm title in him, but to give him the rents and profits, and when the rents and profits have paid the mortgage debt, both the title and right of possession of the mortgagee are at an end.

6. SAME—*the mortgagor is the legal owner as against strangers.* The mortgagor is the legal owner of the mortgaged premises for every purpose and against every person except the mortgagee and his assigns, who are regarded as the legal owners against the mortgagor for the limited purpose of protecting their interests.

7. SAME—*mortgagor's title is never out of him except against the mortgagee.* The title is never out of the mortgagor except as between him and the mortgagee, as an incident of the mortgage debt; and if the debt is barred by the Statute of Limitations, the mortgagor's title is freed from the title of the mortgagee and he is the owner of the premises, not by any new title, but by the title he formerly had.

8. SAME—*upon foreclosure all rights and liabilities merge in the decree.* Upon foreclosure of a trust deed in the nature of a mortgage the cause of action is merged in the foreclosure and sale, and all the rights and liabilities growing out of the trust deed are merged in and transferred to the decree and must be enforced according to its provisions.

9. SAME—*a foreclosure sale frees premises from lien of trust deed.* A sale of land under a foreclosure decree in proceedings instituted by the *cestui que trust* is an absolute discharge of the premises from the lien of the deed if the decree does not expressly save the right to resort to the land again, and, the title of the trustee having been sold by the court, the only interest of the *cestui que trust*, who became the purchaser at the sale, is that evidenced by the certificate of purchase.

10. COLOR OF TITLE—*trust deed is not color of title after foreclosure.* After the foreclosure of a trust deed and a sale of the premises, at which the *cestui que trust* became the purchaser, the *cestui que trust* cannot rely upon the trust deed as color of title.

11. SAME—*certificate of purchase is not color of title.* A certificate of purchase does not purport to convey title nor give the holder the right to possession, and hence cannot be relied upon by the holder as color of title in defending under section 6 of the Limitation act.

12. FORECLOSURE—*when a trustee is bound by foreclosure decree.* A trustee named in a trust deed, who acts as solicitor for the *cestui que trust* in advising, directing and prosecuting a suit to foreclose the deed, is bound by the decree although not a party to the record, and a deed made by his widow and heirs after his death, purporting to convey the title held by him as trustee, is void.

13. SAME—*effect where there is no redemption and no deed is taken out.* A mortgagor, by failing to redeem, does not absolutely lose his title, and if there is no redemption, and the certificate of purchase becomes void by virtue of the Statute of Limitations or otherwise, the mortgagor is then the absolute owner of the premises.

14. SAME—*when a purchaser in foreclosure loses all her rights.* The legal holder of the notes secured by a trust deed, who becomes the purchaser of the premises at a foreclosure sale instituted by her but who fails to take out a deed under her certificate of purchase within the time allowed by statute, loses all her rights as against the maker of the trust deed and those claiming under him.

BOGGS, C. J., and WILKIN, J., dissenting.

APPEAL from the Circuit Court of Fulton county; the Hon. JEFFERSON ORR, Judge, presiding.

WALLACE & LACEY, for appellant:

A decree of strict foreclosure does not extinguish the mortgage. It cuts off and extinguishes the equity of redemption, leaving the mortgage in full force, with the title which it conveyed free from the condition, the effect of which is to vest the title absolutely in the mortgagee. By barring the equity of redemption it confirms the title in the mortgagee. The title conveyed by the mortgage, which was before conditional, now becomes absolute. *Johnson* v. *Donnell*, 15 Ill. 97; *Stephens* v. *Bichnell*, 27 id. 444; *Hassett* v. *Ridgely*, 49 id. 197; *Gates* v. *Railroad Co.* 53 Conn. 334; *Packer* v. *Railroad Co.* 17 N. Y. 287; *Brainard* v. *Cooper*, 10 id. 356; 9 Ency. of Pl. & Pr. pp. 124, 125, clause 3; Jones on Mortgages, sec. 1538.

A decree of foreclosure and sale does not vest title. The effect of it is to merge the mortgage in the decree. The interest of the mortgagee then becomes a decretal lien, and when the decree was executed by the master selling the land, it extinguished all rights of the mortgagee in and to the land which the mortgage and decree, or either of them, gave. A new relation created by the statute then existed. *Wyman* v. *Cochrane*, 35 Ill. 152; *Leslie* v. *Bonte*, 130 id. 498; *Trustees of Schools* v. *Love*, 34 Ill. App. 418; *People* v. *Beebe*, 1 Barb. 379; *Davis* v. *Dale*, 150 Ill. 239; *Ogle* v. *Koerner*, 140 id. 170; *Seligman* v. *Laubheimer*, 58 id. 124; Freeman on Judgments, sec. 216.

In sales by masters in chancery or sheriffs the title does not pass or vest until the deed is executed. The certificate only operates as a lien. It neither vests title nor gives right to possession. *Smith* v. *Colvin*, 17 Barb. 157; *Vaughn* v. *Ely*, 4 id. 159; *Bissell* v. *Payn*, 20 Johns. 3; *Hassellman* v. *Lowe*, 70 Ind. 414; *Young* v. *Withers*, 9 Dana, 165.

An instrument of writing, to be effectual as color, must purport on its face to convey title, and apparently transfer title to the holder. *Dickenson* v. *Breeden*, 30 Ill. 279; *Bride* v. *Watt*, 23 id. 507; *Perry* v. *Burton*, 111 id. 138; *Shackleford* v. *Bailey*, 35 id. 387; *Rigor* v. *Frye*, 62 id. 507.

Limitation does not commence before color of title is acquired by issuance of deed. *Smith* v. *Prall,* 133 Ill. 308.

A mortgage to secure a debt is not color of title. *Robbins* v. *Moore,* 129 Ill. 30.

A certificate of purchase does not pass title, either in law or equity. Until the redemption expires the holder of the certificate is not even entitled to the possession of the property. (*Kihlholz* v. *Wolff,* 8 Ill. App. 371.) Until then he has no title or right to be vested with a title. *Rockwell* v. *Servant,* 63 Ill. 425.

If a party having title or color of title, legal or equitable, parts with it, all his rights are gone, and he occupies the same position in regard to the premises that he would have occupied had he never had such title. *Heacock* v. *Lubuke,* 107 Ill. 396.

At the expiration of the five years in which appellee had to take out a deed she became a stranger to the property, as much so as if she had never had any interest in it. *Seeberger* v. *Weinberg,* 151 Ill. 369.

Where one is a necessary party to a suit and participates in the management of it, or it is prosecuted at his request or for his benefit, or he advises or directs it or has knowledge of it and an opportunity of asserting his rights, he is bound by the judgment or decree. *Cheney* v. *Patton,* 144 Ill. 373; *Bennett* v. *Mining Co.* 119 id. 9; *Express Co.* v. *Smith,* 35 Ill. App. 90; *McDonald* v. *Refrigerating Co.* id. 283; *Cole* v. *Favorite,* 69 Ill. 457; *Thomsen* v. *McCormick,* 136 id. 140; *Montgomery* v. *Vicory,* 11 N. E. Rep. 38; *Elliott* v. *Hayden,* 104 Mass. 180; *Stoddard* v. *Thompson,* 31 Iowa, 80; *Train* v. *Gold,* 5 Pick. 380; *Jackson* v. *Griswold,* 4 Hill, 522; *Burns* v. *Gavin,* 20 N. E. Rep. 801; 36 Ill. App. 179.

HAMMOND & WYETH, and JOHN W. PITMAN, for appellee:

Appellee claims title to the lands in controversy under section 6 of chapter 83 of the Revised Statutes, and for claim and color of title relies upon the trust deed of

186—33

McCune to Johnson, and for evidence of adverse holding as against the mortgagor, upon attempted foreclosure.

The situation is this: After seven years' struggle for her rights, appellee has a certificate of purchase for 680 acres of swamp land thrust in her hand and is turned away. She takes possession at once, with the willing consent of all parties. Her position now is a mortgagee in possession after condition broken and an attempted foreclosure. She encloses the land with fences and pays all taxes for the next ten years. We maintain that this is such claim and color of title, adverse possession and payment of taxes as is contemplated by the statute.

In the case at bar the trust deed and notes were not merged in the decree because no personal judgment was had, so that upon the expiration of the certificate of purchase the defendant was left in possession as mortgagee. No limitation against the notes had run when she went into possession, and none could ever run thereafter, for the rule of law that after the debt is barred the mortgage or trust deed is also barred is avoided by foreclosure or entry within the life of the debt. *Cutter* v. *Jones*, 52 Ill. 84; *Emory* v. *Keighan*, 88 id. 482; *Collins* v. *Toney*, 7 Johns. 278.

Being in possession, then, under the deed of trust, no one claiming under the mortgagor can recover against her in ejectment without first paying the mortgage debt. *Brown* v. *Bookstaver*, 31 N. E. Rep. 17; *Harper* v. *Ely*, 70 Ill. 581; *Keil* v. *Healey*, 84 id. 104; *Emory* v. *Keighan*, 88 id. 482; 94 id. 543; *Hall* v. *Lance*, 25 id. 281; *Kilgour* v. *Gockley*, 83 id. 109.

When there is an attempt, unattended with fraud, to foreclose a mortgage, and a decree is rendered and a sale had, the deed made in pursuance of such decree and sale will be regarded as color of title made in good faith, though the decree is erroneous or even void. *Reedy* v. *Camfield*, 159 Ill. 254.

Color of title is any instrument intending to pass title to land described. *McCagg* v. *Heacock*, 34 Ill. 476.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Five ejectment suits were commenced by the appellant, H. W. Lightcap, in the circuit court of Mason county, on July 13, 1895, against tenants of the appellee, Lydia Bradley. The venue in all the cases was changed, on motion of the defendants, to Fulton county, and appellee was afterward substituted as defendant in each of said cases. The suits were consolidated in the circuit court of Fulton county, by agreement of the parties, under the title of *H. W. Lightcap* v. *Lydia Bradley*. A jury was waived and the cause was tried by the court. There was a finding of not guilty, and the court, after overruling a motion for a new trial, entered judgment against the plaintiff for costs, and this appeal followed.

In the consolidated action the plaintiff claimed title in fee simple to the north-east quarter and the north-east quarter of the south-east quarter of section 22, the south half of section 23, and the north half of the north half of section 26, all in township 23, north, range 6, in Mason county. The defendant pleaded not guilty. At the trial it was stipulated that Benjamin S. Prettyman, on October 8, 1867, was the owner of the land in controversy in fee simple, by title deducible of record from the United States, and that he was the common source of the titles claimed by the respective parties. The plaintiff, to maintain the issues on his part, proved a conveyance of said lands from Prettyman and wife, dated August 13, 1868, to Absalom McCune; a deed from said Absalom McCune and wife to said Benjamin S. Prettyman of the same lands, dated November 30, 1868, and a quit-claim deed thereof from Benjamin S. Prettyman to plaintiff, dated September 4, 1893, all of which deeds were duly acknowledged and recorded. The defendant, to maintain the issues on her part, made proof of a trust deed from said Absalom McCune, dated August 13, 1868, conveying said lands to E. G. Johnson as trustee, to secure the payment

of three promissory notes aggregating $15,000, drawing ten per cent interest, and payable to the defendant, Lydia Bradley.

The defendant claimed title through the trust deed and the following facts established by the evidence: In March, 1872, the defendant, by said E. G. Johnson, her solicitor, the trustee named in the trust deed, filed a bill in the circuit court of Mason county against said Absalom McCune, Benjamin S. Prettyman and others, to foreclose the same. At the August term, 1879, of said court a decree of foreclosure was entered in that suit, in which the court found that there was due from said Absalom McCune on the promissory notes $31,500, and ordered that in default of the payment of that sum, with interest and costs, within thirty days, the lands should be sold by the master in chancery of said court; that the master, on making such sale, should execute a certificate of purchase to the purchaser, specifying the lands purchased and the time when the purchaser would be entitled to a deed unless redemption should be made according to law; that the defendant should be forever barred and foreclosed from all equities of redemption if the premises were not redeemed according to law; that at the expiration of fifteen months next after the day of sale, if the premises should not be redeemed, the master should make a deed to the holder of the certificate; that upon the execution of such deed the grantee therein should be let into the possession of the premises, and that Absalom McCune should remain liable for the payment of any deficiency. In pursuance of said decree the master sold the premises to the defendant for $10,000 on October 27, 1879, and executed a certificate of purchase to her, as directed by the decree. The master reported the sale to the court, and his report was approved and the sale confirmed on November 23, 1879. The lands were wild lands and unoccupied, and about two months after the sale John Coddington went into possession of them as tenant

of the defendant. This was about January 1, 1880, and defendant has been in actual possession, by her tenants, since that time until the commencement of the suit. The lands were not redeemed and no deed was ever made to her on her certificate of purchase. She paid all the taxes on the land from the year 1884 to 1893, inclusive. The trustee, E. G. Johnson, died intestate in 1885. In the spring of 1894 the defendant made application to the widow and heirs of said trustee to sell the premises under the power conferred on the trustee by the trust deed. The sale was made by said widow and heirs and the defendant bid for the premises $35,000. On June 11, 1894, said widow and heirs of the trustee executed a quit-claim deed to the defendant, reciting the trust deed and the sale made by them, and purporting to convey to the defendant all the title of Absalom McCune at the time of the execution of the trust deed and the title thereby conveyed by him to said trustee.

Only legal titles can be considered in this action, and the plaintiff must recover upon the strength of his own title.. He proved a connected title in fee simple to the premises deducible of record from the United States, and made out a *prima facie* case entitling him to recover unless some better title was proved by the defendant. More than fourteen years had elapsed from the date when the redemption expired under the master's sale, and the defendant had never obtained a deed on her certificate of purchase, but had failed and neglected to take out such deed. Section 30 of chapter 77 of the Revised Statutes provides, that when the premises mentioned in any certificate of purchase shall not be redeemed in pursuance of law, the legal holder of such certificate shall be entitled to a deed therefor at any time within five years after the expiration of the period of redemption, and when a deed is not taken within such five years the certificate shall be null and void. It is not denied that the certificate of purchase became null and void under this

statute, but defendant relied upon four defenses, which it is claimed she established by the evidence: First, under section 6 of chapter 83 of the Revised Statutes, in regard to limitations, that the trust deed from McCune to Johnson, the decree of sale and certificate of purchase constituted color of title, which, coupled with her possession and payment of taxes for seven successive years, made her the legal owner of the lands to the extent and according to the purport of her paper title; second, under section 4 of the same act, that her possession and actual residence, through her tenants, for seven successive years, having a connected title in law or equity deducible of record from the United States, by virtue of the same trust deed, decree and sale, barred the action of plaintiff; third, that she had the paramount legal title under the deed from the widow and heirs of Johnson, the trustee; fourth, that she was mortgagee in possession after condition broken and entitled to possession as such. These defenses all rest upon the trust deed and the subsequent proceedings under it, and are so connected that the principles applicable to one are largely controlling as to the others.

To make out the first defense claimed, it is essential for the party claiming the benefit of the limitation to prove a paper title which on its face at least purports to convey title. To establish such a paper title, it appears to be first insisted that the trust deed was a conveyance of the fee to Johnson, with only the equitable right on the part of the mortgagor to redeem; that upon default, the fee simple title at law was in the trustee, and that such title remained in him unaffected by the decree of foreclosure and sale and notwithstanding the sale to defendant, and that defendant held possession under that title. Leaving out of consideration the effect of a mortgage in the statutory form, it is true that a mortgage or trust deed like the one in question here, which purports to convey title, does, as between the mortgagor and mort-

gagee, convey such title; but it is only a qualified conveyance of the land, and the mortgagor parts with the title only as security to his creditor and during the existence of his debt or obligation. In the development of the law of real estate mortgages in England the mortgage was at first a pledge of land, usually requiring a judgment to complete the transfer of title and to vest it in the mortgagee. Afterward, a form of mortgage came into use which vested title of itself, and the pledge changed into an estate in fee without judicial foreclosure upon the mortgagor's default. This mortgage vested absolute title in the mortgagee upon condition broken. Courts of equity, however, recognizing the purpose of the mortgage as merely a pledge to secure a debt, established a right of the mortgagor to redeem. They created a new estate in the form of the equity of redemption and a remedy for the creditor to cut off this estate. A proceeding was devised to extinguish the mortgagor's right to redeem and to vest title in the mortgagee, and this was the proceeding now known as strict foreclosure. (9 Ency. of Pl. & Pr. 118.) Equity assumed jurisdiction to relieve the mortgagor against a forfeiture upon default, and he was relieved from it on payment of the debt. (1 Jones on Mortgages, sec. 8.) Courts of law, following the lead of courts of equity, have adopted many equitable principles as to the titles of the respective parties, and at law the title of the mortgagee can be used only for the purpose of securing his equitable rights under it. "As to all persons except the mortgagee and those claiming under him, it is everywhere the established modern doctrine that a mortgagor in possession is at law, both before and after breach of the condition, the legal owner." (1 Jones on Mortgages, sec. 11.) In many of the States a mortgage confers no title or estate upon the mortgagee, and it is nothing but a mere security for a debt or obligation. This State has adhered to the rule that at law a title vests in the mortgagee, but only for the protection of his

interests. For the purpose of protecting and enforcing his security the mortgagee may enter and hold possession by virtue of his title and take the rents and profits in payment of his mortgage debt. He may maintain the possessory action of ejectment on the strength of such title, but the purpose and effect of the action are not to establish or confirm title in him, but, on the contrary, to give him the rents and profits which undermine and destroy his title. (*United States Mortgage Co.* v. *Gross*, 93 Ill. 483.) When the rents and profits have paid the mortgage debt, both the title and right of possession of the mortgagee are at an end. The mortgagor's interest in the land may be sold upon execution; his widow is entitled to dower in it; it passes as real estate by devise; it descends to his heirs, by his death, as real estate; he is a freeholder by virtue of it; he may maintain an action for the land against a stranger and the mortgage cannot be set up as a defense. The mortgagee has no such estate as can be sold on execution; his widow has no right to dower in it; upon his death the mortgage passes to his personal representatives as personal estate, and it passes by his will as personal property. (1 Jones on Mortgages, sec. 15.) The title of the mortgagee, even after condition broken, is not an outstanding title of which a stranger can take advantage, but it is available only to the mortgagee or one claiming under him. (*Hall* v. *Lance*, 25 Ill. 277.) The mortgagor may sell and convey his title or mortgage it to successive mortgagees, and his grantee or mortgagee will succeed to his estate and occupy his position subject to the encumbrance.

*Fitch* v. *Pinckard*, 4 Scam. 69, was an action of ejectment, and there was a question whether an equity of redemption was liable to execution and would pass to the purchaser at an execution sale. The court, holding that it would pass, said that the earliest doctrine in England settled that the whole legal estate was in the mortgagee, but that the strictness of the law has yielded to the

principle of justice and equity, and the doctrine held in the United States in regard to the estate of the mortgagor is, that he is to be treated as the real owner of the estate for all beneficial purposes, subject only to the rights and encumbrance of the mortgagee.

*Cottingham* v. *Springer*, 88 Ill. 90, was also an action of ejectment, where the same question arose. The court cited *Fitch* v. *Pinckard, supra*, and reiterated what was there said. After referring to the common law rule that the mortgagee held the legal title in fee and that the mere equitable right of the mortgagor could not be sold on execution, the court said (p. 93): "But many of the States—and ours of the number—have, by enactment, made great modifications of the rule. Our legislature at an early day provided that when the mortgagor paid and satisfied the debt and the mortgage had been recorded, he might compel the mortgagee to enter a satisfaction of the mortgage on the margin of the record, which should operate as a discharge and release of the same and forever bar all actions that might be brought thereon. This provision is found in the act establishing the recorder's office, (Pub. Laws of 1819, p. 19, sec. 5,) and has been continued in force ever since. This was a most material modification of the common law rule, as it reinvested the mortgagor with the title simply by the mortgagee stating, over his signature, on the margin of the record, that he had received satisfaction of the debt, and dispensing with a release or re-conveyance for the purpose." The court also said that the provision for a foreclosure at law by a *scire facias* and a sale of the property under an execution at law recognized the equity of redemption as an interest or title that might be sold on execution, subject to the same incidents that other sales of real estate are under when sold under ordinary executions at law.

In *Barrett* v. *Hinckley*, 124 Ill. 32, which was an action of ejectment by Hinckley against Barrett and others,

the court held that the title of a mortgagee exists only for the benefit of the holder of the mortgage indebtedness, and can only be asserted by an action in furtherance of his interest as a means of coercing the payment of the debt; that if a mortgagee conveys the mortgaged premises without assigning the debt, the grantee will hold the legal title in trust for the holder of the debt, and that the mortgage interest, as distinct from the debt, has no determinate value and is no fit subject for assignment. The court also said (p. 46): "It must not be concluded from what we have said that the dual system respecting mortgages, as above explained, exists in this State precisely as it did in England prior to its adoption in this country, for such is not the case. It is a conceded fact that the equitable theory of a mortgage has, in process of time, made in this State, as in others, material encroachments upon the legal theory which is now fully recognized in courts of law. Thus, it is now the settled law that the mortgagor or his assignee is the legal owner of the mortgaged estate, as against all persons except the mortgagee or his assigns. (*Hall* v. *Lance,* 25 Ill. 250; *Emory* v. *Keighan,* 88 id. 482.) As a result of this doctrine, it follows that in ejectment by the mortgagor against a third party the defendant cannot defeat the action by showing an outstanding title in the mortgagee. (*Hall* v. *Lance, supra.*) So, too, courts of law now regard the title of a mortgagee in fee in the nature of a base or determinable fee. The term of its existence is measured by that of the mortgage debt. When the latter is paid off, or becomes barred by the Statute of Limitations, the mortgagee's title is extinguished by operation of law. (*Pollock* v. *Maison,* 41 Ill. 516; *Harris* v. *Mills,* 28 id. 44; *Gibson* v. *Rees,* 50 id. 383.) Hence the rule is as well established at law as it is in equity, that the debt is 'the principal thing and the mortgage an incident."

The mortgagee is the legal owner for only one purpose, while, at the same time, the mortgagor is the owner

for every other purpose and against every other person. The title of the mortgagee is anomalous, and exists only between him and the mortgagor and for a limited purpose. *Delano* v. *Bennett*, 90 Ill. 533, was an action of ejectment. E. T. Warren, the owner of two-fifths of the land in controversy, mortgaged the same to the Kennebeck Bank of Maine. The bank conveyed said two-fifths to Benjamin Wales and others, and Delano claimed the same through *mesne* conveyances from the grantees of the bank. It was held that the deed from the bank purporting to convey this two-fifths interest did not convey anything, and the court said (p. 536): "The mortgage is deemed a mere incident to the mortgage debt, and the conveyance of the interest of the mortgagee in the land without an assignment of the debt is considered in law as a nullity." The title is never out of the mortgagor, except as between him and the mortgagee and as an incident of the mortgage debt, for the purpose of obtaining satisfaction. When the debt is barred by the Statute of Limitations the title of the mortgagee or trustee ceases at law as well as in equity. When the debt, the principal thing, is gone, the incident, the mortgage, is also gone. (*Pollock* v. *Maison*, 41 Ill. 516.) The mortgagor's title is then freed from the title of the mortgagee, and he is the owner of the premises, not by any new title, but by the title which he always had. Statutes of limitation do not transfer title from one to another, and a statute of limitations which would have the effect of transferring the legal title back from the mortgagee to the mortgagor would be unconstitutional. (*Newland* v. *Marsh*, 19 Ill. 376.) The title of the mortgagor becomes perfect because the title of the mortgagee is measured by the existence of the mortgage debt or obligation and terminates with it. *Barrett* v. *Hinckley, supra.*

According to these well established rules of law Benjamin S. Prettyman was the owner of the premises in question when the notes secured by the trust deed be-

came due, except as against the title held by the trustee for the purpose of enforcing payment of said notes. The defendant, Lydia Bradley, had different methods open to her for the enforcement of her rights and the collection of her debt. The trustee might have taken possession of the premises for the purpose of applying the rents and profits, if there were any, toward the satisfaction of the notes. The defendant might elect to foreclose under the power conferred by the trust deed, or, if the circumstances justified it, she might have had a strict foreclosure in a court of equity. Such a foreclosure is, in fact, a proceeding to foreclose the equity of redemption, and it is the only vestige of the former common law foreclosure remaining in our law. It is only in use to a very limited extent, and is not permitted except under extraordinary circumstances. Another method, and the one which she chose to pursue, was the proceeding by foreclosure and sale in a court of equity, which is a proceeding to collect the debt and enforce the security through the powers of such court. What the effect would have been if she had pursued some other remedy is not material, as she did not pursue or attempt to pursue any other, but made her election to invoke the powers of a court of equity and the statutes of the State. She submitted to have her rights fixed by them and not enforced through the powers conferred upon the trustee by the trust deed. She did not take possession under the mortgage, but took possession as purchaser under the sale made by the court. A decree was entered in pursuance of the prayer of her bill, ordering a sale of the premises, which was duly made and she became the purchaser. Having made her election and secured a valid sale of the property, she must abide by it. (*State Bank* v. *Wilson*, 4 Gilm. 57.) The cause of action was merged in that foreclosure and sale, and all the rights and liabilities growing out of the trust deed were transferred to the decree. When a mortgage is foreclosed by suit the decree of the court becomes the basis

of title. (*United States Mortgage Co.* v. *Gross, supra.*) By the decree, and the execution thereof, the legal liability was transferred to the decree.   The debt was merged in the decree, and the rights and liabilities growing out of the trust deed were fixed by such decree and to be enforced through its provisions. · *Wayman* v. *Cochrane,* 35 Ill. 151.

It is insisted by counsel that the title conveyed to Johnson could not merge in the decree; and perhaps the doctrine of merger does not strictly apply, but the title which Johnson had was only available for the collection of the notes, and they were merged in the decree.   The defendant had asked and obtained a decree for the enforcement of her rights in another manner and by another means.   Whether the doctrine of merger applies or not, the sale of the premises under the decree exhausted all the rights and remedies under the trust deed, and the title which had been in the trustee was sold by the court. (*Kelgour* v. *Wood,* 64 Ill. 345; *Walker* v. *Warner,* 179 id. 16.) In *Seligman* v. *Laubheimer,* 58 Ill. 124, the court said (p. 126): "Without determining the legal effect of the mere foreclosure, we do hold that the decree, followed by a sale of the premises, the purchase, and the subsequent acts of the first mortgagee, extinguished his mortgage lien. *   *   *   Plaintiff in error obtained his decree, caused a sale, became the purchaser, received his certificate of purchase, and then procured an award for a special execution to make the residue of his debt.   By these acts the mortgage lien was extinguished.   The intention to merge the lien is clearly deducible from them." In *Ogle* v. *Koerner,* 140 Ill. 170, the court said (p. 179): "A mortgage, or, as in this case, a deed of trust in the nature of a mortgage, vests in the party secured a lien upon the mortgaged premises.   By virtue of that lien the mortgagee is entitled to have the mortgaged property sold under a decree of foreclosure and the proceeds of the sale applied to the payment of the debt secured.   This is the mode provided by law for the enforcement of the lien, and when the lien

has been once enforced by the sale of the property, it has, as to such property, expended its force and accomplished its purpose and the property is no longer subject to it." In *Davis* v. *Dale*, 150 Ill. 239, the law was again stated, as follows (p. 243): "By virtue of the lien created, the mortgagee or *cestui que trust* had the right to have the security foreclosed and the property sold and the proceeds applied in payment of the secured debt. But when this has been done, and the lien enforced by a sale of the property and the proceeds applied, the mortgage or trust deed has expended its force and the property is no longer subject to its provisions. (*Ogle* v. *Koerner*, 140 Ill. 170; *Seligman* v. *Laubheimer*, 58 id. 124.) Nor does it in any way affect the result that the holder of the secured indebtedness becomes the purchaser at the sale, whether he be the mortgagee or *cestui que trust* or not. By becoming the purchaser a new relation created by the statute exists, in nowise dependent upon any privity of contract between the purchaser and mortgagor." The effect of the sale could not be otherwise. To hold that the mortgage remains in force would be to abrogate the statute, which would be of no practical effect if the failure to take a deed leaves the mortgage still in force. It is absurd to say that a mortgagee, by neglecting or refusing to take a deed until the expiration of five years, can thereby re-instate himself in the same position as before the purchase. The land being freed from the lien of the trust deed by the sale, the title of the trustee, Johnson, was gone, and the only interest of defendant was by virtue of the certificate of purchase. The sale of premises under a decree of foreclosure, where the decree does not expressly save any right to resort to the land again, is an absolute discharge of the premises from the lien. In the absence of a provision for another sale the premises will be discharged, even from unmatured portions of the debt. (*Rains* v. *Mann*, 68 Ill. 264.) Such a sale is a sale of the land and of all interests, both that

which the mortgagor had at the execution of the mortgage and the interest of the mortgagee and other parties to the suit.  It is made by the court as vendor, and a sale discharges the land from the lien and transforms it into the statutory lien by the certificate of purchase. (*Smith* v. *Smith*, 32 Ill. 198.)  It is true, that if the premises are redeemed by the mortgagor they become like any other property owned by him and may be subject to execution and sale for a deficiency; but that is because they belong to the debtor, and not on account of any lien by virtue of the mortgage.  A redemption by any person not liable for the debt would free them absolutely, so that they could not even be levied upon by execution for a deficiency.

The case most relied upon by counsel as holding that the foreclosure and sale left the title in Johnson unaffected, is *Williams* v. *Brunton*, 3 Gilm. 600.   In that case there had been no sale.  It was an action of ejectment by Williams against Brunton.   Walker, a former owner of the premises, had mortgaged them to King and afterward conveyed them to Brunton.   The plaintiff, Williams, claimed title from an independent source.  King obtained a judgment by *scire facias* on his mortgage, but no sale had been made.   There was a judgment in favor of Williams against Brunton in the ejectment suit by default. This judgment was set aside and King was let in to defend in the name of Brunton and himself, claiming under his mortgage and the judgment foreclosing it.  The question in this court was whether King sustained such relation to Brunton that he had a right to defend.  It was insisted on behalf of Williams that if there was privity between King and Brunton while the mortgage was in force, the mortgage was extinguished by the foreclosure and the privity thereby ceased.   On the other hand, it was argued that by a mere judgment without a sale or deed no new estate was created or invested in the mortgagee, and that the judgment did not disturb or drown

the lien or the estate created by the mortgage on the principle of merger. The court held that King was properly allowed to defend, and said that a judgment or decree, and subsequent purchase, was connected with and consistent with the first title and in aid of it. The very case cited upon which the decision of the court rested, (*Den* v. *Stockton*, 7 Halst. 322,) decided that a sale does divest or suspend the legal estate or right of possession of the mortgagee. A judgment on the *scire facias* itself had created no new lien, but was merely a means of making available the lien created by the mortgage. The court said that a subsequent title obtained by a sale is clearly consistent with the first and connected with and in aid of the original title.

There is no dispute of the proposition that a purchaser at a mortgage sale may deraign title through a mortgage. The title of the purchaser relates back to the execution of the mortgage, and it may be shown as a basis for the foreclosure and sale. (*Kruse* v. *Scripps*, 11 Ill. 98.) After the sale no one has any further interest in the premises except the mortgagor and the purchaser, although the mortgage is one of the links in the chain of title. The trust deed of Johnson, after the foreclosure and sale, did not constitute color of title so as to enable defendant to avail herself of the Statute of Limitations.

Defendant took and held possession under her certificate of purchase, but the paper title relied upon under the Statute of Limitations must apparently transfer title to the holder. (*Shackleford* v. *Bailey*, 35 Ill. 387; *Dickenson* v. *Breeden*, 30 id. 279; *Bride* v. *Watt*, 23 id. 507; *Rigor* v. *Frye*, 62 id. 507.) A certificate of purchase does not purport to convey title, but on its face shows the contrary, by stating the amount of the bid and when the holder will be entitled to title if the premises are not redeemed. A purchaser is not entitled to possession by showing that he bid off the land at a sale. (*Johnson* v. *Baker*, 38 Ill. 98.) The purchaser of land under an execution of the fore-

closure of a mortgage has no legal title; or right to be invested with a legal title, until the time allowed for redemption has expired. (*Rockwell* v. *Servant,* 63 Ill. 424.) The certificate of purchase confers on the holder no title in the land. (*Huftalin* v. *Misner,* 70 Ill. 55.) In *Hays* v. *Cassell,* 70 Ill. 669, it was said (p. 672): "The certificate of purchase conveyed no title to the purchaser, nor did it disturb the possession of the defendant. That still continued in him, and would so remain until fifteen months had elapsed and his title transferred by the sheriff's deed." A court has no power to award possession to a purchaser before the expiration of the period of redemption, and such purchaser is not entitled to possession before the execution of a master's deed to him. The certificate of purchase only entitles him to receive the legal title at a future time, upon a certain condition, and a decree is erroneous and will be reversed which awards possession before that time. (*Bennett* v. *Matson,* 41 Ill. 332; *Myers* v. *Manny,* 63 id. 211.) No contract was proved by which the defendant became entitled to the possession when she took such possession about two months after the sale, and she was a trespasser in doing so. It is true that a mortgagee, in case the rents and profits are pledged as security, may, under some circumstances, have a receiver appointed to apply them upon any deficiency; but this is only done upon equitable grounds and by a court of equity. The appointment of a receiver is an equitable remedy, and, in effect, an equitable execution. (2 Jones on Mortgages, 1516.) Neither the mortgagee nor the purchaser has a right to possession, but the appointment of a receiver is a power which a court of equity will exercise to prevent palpable wrong and injustice. (*Haas* v. *Chicago Building Society,* 89 Ill. 498.) The certificate of purchase did not at any time purport to convey title or give defendant any right to the possession, and could not be made a basis of title under section 6 of the Limitation act. She showed no right under that section.

186—34

The second claim, under section 4 of the Limitation act, is even less tenable than the other. Under that section something more than mere color of title is required. The title must be such as is *prima facie* good, and such as courts will enforce unless rebutted or destroyed by evidence of a better title. (*Moore* v. *Brown,* 52 U. S. 414.) Inasmuch as the land had been freed by the sale from the lien of the trust deed, and the certificate of purchase did not pass title but was only an inchoate right to a title upon a certain condition, the defendant showed no title under section 4.

The third alleged defense is made under the deed of the widow and heirs of Johnson, the deceased trustee. We have already disposed of the question whether any title remained in the trustee after the defendant made her election and caused the premises and the titles of all parties to be sold and the land to be discharged of the lien. There is a question, however, raised from the fact that Johnson, the trustee, was not a party to the record in the foreclosure suit. He was the defendant's solicitor and legal adviser in the foreclosure proceedings. The suit was brought through his instrumentality and was prosecuted through him and under his direction, as solicitor for the defendant. He had no interest to be affected, but merely held the title of a trustee for the purpose of enabling the defendant to obtain payment through the exercise by him of powers conferred by the trust deed. The bill which he filed asked the court for a foreclosure instead of the exercise of such powers, and he obtained a decree which relieved him from any further responsibility or the exercise of any such powers. Where a suit is advised, directed and prosecuted by a party in that manner, although he is not a party to the record, he is bound by the decree. (Freeman on Judgments, sec. 174; *Cole* v. *Favorite,* 69 Ill. 457; *Bennitt* v. *Wilmington Star Mining Co.* 119 id. 9.) The deed from the widow and heirs was void and conveyed no title.

The last proposition relied upon in support of the judgment is, that defendant was in possession as mortgagee after condition broken. What has been said with reference to the continuance of the trust deed, and the title thereby conveyed, after the sale, applies with equal force to this claim. When the premises were sold a new relation was created, fixed by the terms of the statute. The trustee never was in possession, and when defendant took possession she had asked the court to enforce, and the court had enforced, her rights through its own powers, as governed by the statutes of the State. The relation created by the statute upon the sale of the premises was the only remaining relation between the parties. As against the purchaser the mortgagor had only a right to redeem from the sale, and it is argued that because there was no redemption the title of the mortgagor was absolutely gone, and therefore he could never afterward assert title under any circumstances.

As we have seen under repeated decisions, the premises are discharged of the lien of the mortgage and the obligation is transformed into the new lien. Necessarily, the title is in the mortgagor subject only to that lien, and while, as against it, he has nothing but a right of redemption, as against all the rest of the world he is the owner. He has a right of possession, and his estate is alienable and devisable as before. After twelve months his creditors may redeem, and an execution against his lands and tenements is levied, in such case, upon the land. If at a sale it brings more than the charges against it, he is entitled to the surplus as arising out of his property and estate. The certificate of purchase does not transfer title, but only assures to the purchaser a conveyance of the legal title if the premises are not redeemed. If the certificate of purchase becomes null and void by virtue of the Statute of Limitations, or otherwise, so that the premises are freed from the lien, the mortgagor is then the absolute owner. The lien of the mortgage

and the title of the mortgagee cease by operation of law when the debt or obligation is barred by the Statute of Limitations. (*Barrett* v. *Hinckley, supra.*) And there is no difference, in principle, where the limitation runs against the new lien in the form of a certificate of purchase.

In *Stephens* v. *Illinois Mutual Ins. Co.* 43 Ill. 327, the question being whether a mortgagor had any insurable interest in mortgaged premises after a decree of fore-closure and sale, it was held that he had, and the court said (p. 331): "His estate, as mortgagor, would not have been lost until the expiration of his right to redeem. In this State the purchaser under a sheriff's sale upon judgment and execution, or at a master's sale on foreclosure of a mortgage, acquires by his purchase no new title to the premises until the period of redemption has passed and he is entitled to a deed. His deed will relate back, it is true, to the beginning of his lien, in order to cut off intervening encumbrances, but it will not carry back the absolute divestiture of title, as is evident from the fact that neither judgment debtor nor mortgagor can be called to account for rents and profits." The mortgagor still has the estate of a mortgagor, but the amount and time of redemption have become absolutely fixed by the decree of sale. (2 Jones on Mortgages, sec. 1661.) After the expiration of the period of redemption the title of the mortgagor would be absolutely gone, in the sense that the purchaser had become absolutely entitled to a conveyance of it, and in this sense it has often been said that his title is gone, but it is never actually out of him until a conveyance is made. The purchaser cannot oust him from possession or call for an account of rents and profits without a deed, and the certificate of purchase could never change from a lien into title to the land until a deed is made. The mortgagor's right is gone if the purchaser complies with the statute and avails himself of the right to a conveyance of the title. By the decree and by the statute the title of the mortgagor and those

claiming under him would only be divested and the legal title vested in defendant upon the execution of a deed to her. At the expiration of fifteen months from the day of sale she became entitled to such a deed conveying to her the legal title, but she never obtained it. Whether she could have successfully defended an action of eject-ment during the five years after the expiration of the period of redemption, on the ground that, although she did not have the legal title, she was entitled to a convey-ance of it, is not material. Whether her right to a deed would have been a defense is not involved here, because she lost that right absolutely at the expiration of five years, and from that time forward had no further inter-est in the premises. She could have no other or differ-ent right under her purchase than any other purchaser. If some other person had purchased the premises, no one would say that such purchaser acquired any right except under the certificate of purchase, and it cannot be that the mortgagee acquires any other or different or better title than any other purchaser. It would be destructive of the fairness and equality of such sales that the mort-gagee should acquire a better title or should have any advantages as bidder over any other person.

Before the enactment of the statute rendering a cer-tificate of purchase null and void at the expiration of five years, this court had fixed a limitation which it deemed equitable in *Rucker* v. *Dooley*, 49 Ill. 377, and when the legislature, acting within their unquestioned powers, changed the rule by this statute, it was upheld as valid in *Ryhiner* v. *Frank*, 105 Ill. 326. The effect of the statute has been several times considered, and it is no longer an open question. In *Seeberger* v. *Weinberg*, 151 Ill. 369, the court, after referring to the statutes, said (p. 380): "If, then, it be assumed, as seems most probable, that See-berger failed to obtain a master's deed, his right to ob-tain such deed is barred by limitation and his certificate of purchase has ceased to be of any validity. Whether

the lapse of time is to be given the effect of extinguishing his right or of merely barring his remedy, he has no further title or interest in the premises described in the certificate, which either he or his grantee can enforce, either at law or in equity. At the expiration of five years he became, for all practical purposes, a stranger to the property, and had no more dominion over it or power to convey it than he would have had if he had never had any interest therein. The statute above referred to was considered by this court in *Ryhiner* v. *Frank*, 105 Ill. 326, and it was there held that where land was sold on execution, and the sheriff's deed was not taken out within five years from the expiration of the statutory period of redemption, the certificate of purchase becomes void, so that a sheriff's deed subsequently issued thereon is a nullity and passes no title. So in *Peterson* v. *Emmerson*, 135 Ill. 55, it was held that after the expiration of the five years given by the statute for taking out a master's deed the certificate becomes a nullity, and a court of equity cannot compel or authorize the execution of a deed to the purchaser or his assignee by the officer whose duty it is to make such deeds. Such being the condition of Seeberger's title, it is difficult to see upon what legal or equitable principle he can now be entitled, as against the grantees of Farr, to any portion of the relief prayed for in the bill. His certificate of purchase being *functus officio* and void, he certainly could have had no remedy against the heirs or representatives of Farr if they had still retained their interest. No remedy could have been asserted by him upon the certificate, as that had become a nullity; nor could he have enforced any remedy upon the original mortgage, as that remedy had been completely exhausted by the foreclosure and sale." Again, in *Brown* v. *Ridenhower*, 161 Ill. 239, the decisions of the court were reviewed, and it was held that the holder of a certificate of purchase which had become void under the statute has no remedy against the grantees of the

mortgagor; "that he can assert no remedy upon the cer-
tificate as that has become a nullity, and can enforce no
remedy upon the original mortgage as that remedy was
exhausted by the foreclosure and sale." The court re-
peated what was said in *Seeberger* v. *Weinberg*, that the
purchaser had no further interest in the premises.

In *Peterson* v. *Emmerson*, 135 Ill. 55, it was held that a
purchaser whose certificate has been barred by the Stat-
ute of Limitations has no equitable right to a title. In
that case, Elizabeth Emmerson, who was a purchaser
under foreclosure in 1871, and had been in possession of
the premises since early in 1872 but had not taken any
deed on her certificate of purchase, filed her bill to pro-
cure a deed. The court said (p. 60): "It is sticking in the
bark to say, that notwithstanding the certificate is null
and void, yet the sale which it was given to evidence has
such vitality and force that a court may decree, by virtue
thereof, the peremptory and absolute transfer by its of-
ficer of the property and title of one person to another
and different person. Such action on the part of the
court is a virtual annulment of the mandate of the stat-
ute and an infringement of vested legal rights. * * *
It does not alter the case that defendant in error has
been in actual possession of the land since 1872, claiming
ownership, and has paid all the taxes assessed thereon.
Such acts do not so take the case out of the statute as
to justify the transfer to her of the legal title vested in
the heirs of the mortgagor. If she has gained any rights
by virtue of such possession, claim of ownership and pay-
ment of taxes, the courts will, doubtless, if called upon,
protect her therein; but surely the existence of such
rights, if any there be, does not afford just and equitable
grounds for transferring to her a legal title to which she
is not entitled under the law of the land."

Counsel urge that a statute of limitations cannot trans-
fer title, and therefore the failure to take a deed did not
transfer title to plaintiff. There is no pretense that a

statute of limitations can transfer title, but the certificate of purchase was never color of title. It conferred a right to obtain a title, and recited that at a certain time and upon a certain condition the holder would be entitled to a deed conveying the title. The right so assured to the defendant by the certificate became barred, so that no deed could be taken. The statute took away no vested right or title, but merely provided for the neglect of the defendant to take out a deed, so that the right to receive a deed conveying the legal title was lost. All limitations are in the same category. As against every right, except that of the purchaser, the law recognizes the mortgagor or his grantee as the owner of the premises, and her right and lien have been barred and the title has been freed from it. The enforcement of statutes of limitation is frequently a hardship, but their enactment is within the power of the legislature, and it is the plain duty of the courts to uphold them. Claims are continually being barred by the running of statutes, but it has never been thought that the apparent hardship of a particular case could make any difference as to their effect. No greater hardship can inure to the defendant than inures to any person having a claim which he has, through his own negligence, allowed to become barred, when the moral obligation to pay may still remain. The extent of the hardship, in any case, may depend upon the pecuniary circumstances of the loser, and the loss of a small sum may be a greater hardship to one than the loss of a large one to another, but, in any case, the party has only himself to blame for failing to enforce his rights within the time prescribed by the statute.

The judgment of the circuit court is reversed, and the cause is remanded to that court for further proceedings in accordance with the views herein expressed.

*Reversed and remanded.*

BOGGS, C. J., and WILKIN, J., dissenting.