David Bradley & Co. v. Peabody Coal Co.

## David Bradley & Co. v. Peabody Coal Co.

1. RENTS—*When Due and Payable.*—Where the rent reserved for the entire term of a demise is for a definite sum. the principal portion of which is made payable at fixed periods by the specific provisions of the lease, but as to the remaining portion no time is fixed for its payment, such portion is payable at the expiration of the term.

2. SAME—*Where No Time is Fixed for the Payment of the Rent.*— Where no time is fixed for the payment of a specific portion of the rent of a demise, such portion is due at the expiration of the term; but the payment of such portion at an earlier period of the term will be good as between the lessor and lessee, and a payment in advance will ordinarily be good as against a party who, after the payment, acquires the reversion and assignment of the lease.

3. PRESUMPTIONS—*As to the Existence of the Common Law in Adjacent States.*—The act of parliament in 32 Henry VIII, by which it was enacted in effect that the assignee of the reversion should be entitled to

the rents, became by adoption a part of our common law, and in the absence of evidence to the contrary it will be presumed to be the law in the State of Iowa governing in controversies over transactions arising in that State.

4. ATTORNMENT—*Necessity of, Dispensed with by Statute.*—Under section 14 of chapter 80 of the Revised Statutes, the necessity of an attornment is dispensed with in certain cases.

5. SAME—*What is Tantamount to an Attornment.*—The fact that after an assignment of a lease, the lessee recognizes the assignee as his landlord and pays rent to him, operates as a sufficient attornment in all cases.

6. ASSIGNMENT—*Of Leases—Effect on Previous Payments of Rent.*— Where no time is specified in a lease for the payment of a portion of the rent reserved, such portion does not become due until the expiration of the term; but the payment of it at any previous period operates to put the assignee of the reversion in the place of the grantor or assignor, and vests him with the rights of such grantor or assignor, and if such payment is made before the assignment, whether in advance or otherwise, the lessor can not collect it a second time by suit, and no more can his grantee of the reversion or his assignee of the lease.

7. REVERSION—*Effect of Mortgages upon.*—The effect of giving a mortgage by a lessor upon his reversionary interest in the demised premises imposes no limitation upon his rights.

8. MORTGAGE SALES—*Of Demised Premises.*—The purchaser at a sale of the demised premises under a decree of foreclosure acquires no right to the rent of such premises by reason of the mortgage or the sale upon foreclosure of the same, unless a notice of claim to the rents under the mortgage or notice of sale is given to the tenant before the payment of such rents by him.

*Action for Rents.*—Appeal from the Superior Court of Cook County; the Hon. FARLIN Q. BALL, Judge, presiding. Heard in this court at the March term, 1901. Reversed and remanded. Opinion filed January 16, 1902.

**Statement.**—David Bradley & Co., a corporation, and appellant herein, was engaged in the business of selling agricultural implements in Council Bluffs, Iowa. It took a written lease of certain premises from the owner thereof, George F. Wright, for the term of eight years. The lease was for the period from July 1, 1890, to June 30, 1898. It provided that the total rental for that period should be $20,000, to be paid, as follows:

Cash down on July 1, 1890 . . . . . . . . . . . . . . . $8,000
               July 1, 1891 . . . . . . . . . . . . . . .  4,000
               July 1, 1892 . . . . . . . . . . . . . . .  2,000
               July 1, 1893 . . . . . . . . . . . . . . .   250

David Bradley & Co. v. Peabody Coal Co.

and at the rate of $250, quarterly, for the five years from July 1, 1893, to June 30, 1898. While the total rent of the whole term was to be $20,000, the time of payment is specified in the lease for only $19,000. The lease does not state when the $1,000, being the difference between the total rental of $20,000 and the enumerated payments aggregating $19,000, was to be paid. It is to recover this sum of $1,000, as rent reserved by the lease, that this suit was brought.

George F. Wright, the owner of the premises and lessor in the lease, was one of the attorneys for David Bradley & Co., lessee. Their relations were friendly. Wright owned a farm near Council Bluffs, and during the period of the lease purchased his agricultural implements from his lessee, David Bradley & Co., which was doing business in that line. When he did so he would not pay for his implements in cash, but the amount would be charged up against any rent due him under the lease. Frequently he called for cash as rent under the lease, and David Bradley & Co. would pay it to him. The account ran on this way from July 1, 1890, the date of the making of the lease, to July 1, 1895. Frequently, during that period, the price of implements furnished and cash paid Wright, would exceed the amount due him for rent under the lease, and he would at such times give his note for the excess. On July 1, 1895, there had been paid by appellant to Wright, during the five years that the lease had then run, $17,000 as rent, and on that day there remained unpaid the sum of $3,000, being the rent to become due at the rate of $250 per quarter during the three years, from July 1, 1895, to June 30, 1898.

On July 1, 1895, the premises occupied by the appellant and leased as above stated, were conveyed by sheriff's deed to Peabody Coal Company, appellee. At the same time George F. Wright executed an assignment to Peabody Coal Company, appellee, of the lease, and his interest in the rents to accrue thereunder after the date of the assignment. In other words, on July 1, 1895, the lease of appellant still had three years to run. The reversion was conveyed by

sheriff's deed on that date to appellee, and on that date appellee received an assignment of the lease from George F. Wright, entitling it to collect all the unpaid rents which should accrue during the last three years of the lease. After this date, July 1, 1895, appellant paid the rent as it accrued, $250 quarterly, to appellee, making a total payment by appellant to appellee of $3,000 during the last three years of the lease.

In December, 1892, which was more than two years after the making of the lease, George F. Wright gave a mortgage on the leased premises to Francis S. Peabody, president of appellee, which mortgage was shortly thereafter assigned to appellee, so that, in so far as this case is concerned, it may be treated as a mortgage to the Peabody Coal Company, appellee. In the spring of 1894 foreclosure proceedings were instituted by appellee against George F. Wright, owner of the premises, and a sale of the premises was had on June 18, 1894. Under the law of Iowa, Wright's period of redemption expired in June, 1895. George F. Wright not having redeemed, the premises were conveyed by the sheriff on July 1, 1895, to appellee.

It is undisputed that, after July 1, 1895, and up to June 30, 1898, appellant paid appellee the sum of $3,000 as rent under the lease, and that no question was raised during that time as to the $1,000 which is the subject of this suit. It is also practically undisputed that, prior to July 1, 1895, appellee had paid George F. Wright $17,000 as rent under the lease, although the payments specified in the lease as due for that period amount to only $16,000. In other words, appellant paid to George F. Wright, prior to the time appellee became the owner of the premises, the $1,000 rent, the time of payment of which was not specified in the lease.

Appellee, as owner of the reversion and assignee of the lease, brought this suit to recover the $1,000 of rent reserved by the terms of the lease, the time for the payment of which was not fixed by the lease. Appellant defended upon the ground that it had paid this rent to Wright, its lessor,

before the right to the reversion had been acquired by appellee and before the assignment of the lease by Wright to appellee.

The precise time of the payment of the $1,000 of rent in question by appellant to Wright does not appear, except that it was before July 1, 1895. Whether it was before or after the foreclosure sale of the demised premises under appellee's mortgage, by which sale appellee became the purchaser, does not appear. No specific notice of the foreclosure proceeding appears to have been given by appellee to appellant, for the purpose of notifying appellant that after such sale the appellee would claim right to the rents of the premises. It is, however, contended by appellee that appellant, through its agent, Loomis, had knowledge of the foreclosure proceeding. This contention is based upon the following testimony of Loomis: "I remember that Mr. Wright was likely to lose his title to the property through foreclosure proceedings."

The cause was submitted to a jury and a verdict was returned, by which the issues were found for appellee, and its damages were assessed at $1,000, the amount sued for.

From judgment upon this verdict the appeal here is prosecuted.

HENRY A. GARDNER and HENRY L. STERN, attorneys for appellant.

ARTHUR W. UNDERWOOD, attorney for appellee.

Rent not due is a part of the realty itself. It is an incident of the reversion, and passes to a purchaser at sheriff's sale. Burden v. Thayer, 3 Metc. (Mass.) 76; Disselhorst v. Cadogan, 21 Ill. App. 180; Foote v. Overman, 22 Ill. App. 184; Carson v. Crigler, 9 Ill. App. 83; Bloodworth v. Stevens, 51 Miss. 480; Lancashire v. Mason, 75 N. Car. 457; Montague v. Gay, 17 Mass. 439; Hatfield v. Lockwood, 18 Iowa, 296; Dixon v. Niccolls, 39 Ill. 384; Epley v. Eubanks, 11 Ill. App. 274; Van Wagner v. Nostrand, 19 Ia. 422; Hatfield v. Lockwood, 18 Ia. 296; Braddee v. Wiley, 10 Watts, 362; Abercrombie v. Redpath, 1 Clarke (Iowa), 111.

Payment of rent in advance is not a fulfillment of the covenant to pay rent, but is an advancement to the landlord, on an implied condition that he continue entitled to the rent till the day of payment. De Nichols v. Saunders, L. R., 5 C. P. 594; Cook v. Guerra, L. R., 7 C. P. 132; Stone v. Knight, 23 Pick. (Mass.) 97; Hatch v. Sykes, 64 Miss. 307; Jones on Mortgages, Vol. 1, Sec. 774; Clun's case, 10 Co. R. 127 b; Woodfall, Landlord and Tenant, 423.

A mortgage of leased premises transfers to the mortgagee the right to receive the rent. Pingrey on Mortgages, Sec. 932.

Grantee of leased premises may sue for rent in his own name. Foote v. Overman, 22 Ill. App. 184; Barnes v. Northern Trust Co., 169 Ill. 116.

Mr. Justice Sears delivered the opinion of the court.

The only question presented upon his appeal is as to the effect of the payment of the $1,000 of rent by appellant to Wright before the appellee had acquired the reversion through sheriff's deed and before Wright had assigned the lease to appellee.

The rent reserved for the entire term of the demise was $20,000. Of this sum $19,000 was made payable at fixed times by specific provision of the lease. As to the remaining $1,000, no time was fixed for its payment. It would, therefore, be payable at the expiration of the term. The payment of it at any earlier period would, of course, be good, as between lessor and lessee. We are of opinion that such a payment in advance would also ordinarily be good as against one who, after the payment, acquired the reversion and assignment of the lease.

At the common law there was no right of action upon the lease in a grantee of the lessor's reversion; for there was no privity of contract between such grantee and the lessee. Nor could an assignment of the lease operate at the common law to invest the assignee with legal title to the rents. By act of Parliament in 32 Henry VIII, it was enacted in effect that the assignee of the reversion should be entitled to the rents. This became, by adoption, a part of our common

David Bradley & Co. v. Peabody Coal Co.

law. In the absence of evidence to the contrary, it must be presumed to be the law governing in the State of Iowa, where the transactions now in question arose. But the courts of England and of this country have held that even after the enactment of that statute, yet it required an attornment by the tenant to enable the grantee of the reversion to maintain an action for the rents due upon a lease made by his grantor, for although the assignment of the reversion might create a privity of estate between lessee and assignee, yet there would be no privity of contract until the lessee had attorned. Such, at least, is the construction of the statute in this State. Fisher v. Deering, 60 Ill. 114.

Authorities elsewhere differ as to the effect of the statute and the necessity, after its enactment, of any attornment. 2 Taylor on Landlord and Tenant (8th Ed.), Sec. 439.

Our Illinois statute, Sec. 14, Chap. 80, R. S., dispenses with such necessity of an attornment. Howland v. White, 48 Ill. App. 236.

But in this case the fact that appellant, after the assignment, recognized appellee as its landlord and paid rent to it, operates as a sufficient attornment, and this is so under the common law of this country, and irrespective of the Illinois statute.

But the right to sue for the rents due under the lease, whether by virtue of the English enactment or by force of our Illinois statute, is a right only to enforce that which the lessor himself might enforce. It operates in effect to put the assignee of the reversion in the place of his grantor or assignor, and vest the former with the rights of such grantor or assignor. If, before the grant or assignment, the rent had been paid, whether in advance or otherwise, the lessor could not collect it a second time by suit, and no more could his grantee of the reversion or his assignee of the lease. It is the same remedies by entry, action, distress, or otherwise, as the lessor or grantor possessed, which vest in the grantee or assignee by force of the statute. Therefore, if no other question arose in this case than the

effect of a payment in advance of rent under the lease made by the lessee to the lessor before a grant of the reversion to another, we would hold that such payment was good to release the lessee from any claim of the grantee for the rent so paid. But another question does arise in this case, viz., the effect of the sheriff's sale to appellee of the demised premises. This sale was made on June 18, 1894, and was upon foreclosure of a mortgage made by Wright in December, 1892. It is contended by the learned counsel for appellee that the effect of this mortgage and the sale upon foreclosure of the same was to make ineffectual the payment of the $1,000 of rent, which was made by Wright to appellant.

We have no doubt as to the effect of the mere giving of the mortgage. It imposed no limitation upon the right of lessor (who was the mortgagor of the reversion) to receive, or the right of the lessee to make, payments in advance or otherwise, of the rent provided by the terms of the lease. If a mortgagee can be held to be a grantee of the reversion in whom the right to rents under the lease vests by force of the statute, as held in Scheidt v. Belz, 4 Ill. App. 431, yet, as suggested in that case, his right would only operate upon the lessee after he had notified the lessee that he elected to claim the rents as mortgagee. A somewhat different question arises as to the effect of the foreclosure sale. But we think that the sale could not affect the relation of appellant as lessee to Wright as lessor, to make payments of rent ineffectual when made after such sale, unless a notice of the sale was given to appellant. 2 Taylor's Landlord & Tenant (8th Ed.), 442; Farley v. Thompson, 15 Mass. 18; F. C. M. Co. v. Melven, Id. 268; Stone v. Patterson, 19 Pick. 476; Smith v. Taylor, 9 Ala. 633; O'Connor v. Kelly, 41 Cal. 432; Winfrey v. Work, 75 Mo. 55; Weider v. Foster, 2 P. & W. 23.

We are therefore of opinion that appellee acquired no right to the rent in question by reason of the mortgage or the sale upon foreclosure of the same, unless a notice of claim to rents under the mortgage or notice of sale was

given to appellant. That any such notice was given to appellant before the payment by it of the $1,000 rent, is not shown by the record. The testimony of Loomis that he remembered that Mr. Wright was likely to lose his title to the property through foreclosure proceedings, we regard as insufficient in this behalf. It does not appear that he "remembered" it as of any specific time, whether before or after the payment of the rent in question. No other showing of notice is made. Nor does it appear from the evidence whether the rent was paid before or after the sale. There is evidence tending to show that some part of it was paid after the sale, but it is very indefinite and uncertain.

We do not regard the conversation between appellee's attorney and Wright or appellant's representative at the time of the assignment, as sufficient to establish that the $1,000 was paid after July 1, 1895.

We are of opinion that upon the evidence the recovery can not be sustained.

The foregoing consideration is sufficient upon the questions raised as to instructions to the jury.

It is unnecessary to discuss the contention of counsel as to a variance between proof and *narr.* by reason of clerical error in striking out the name of Wright and substituting the name of appellee in certain parts of the declaration, since such faults can be corrected before another trial.

The judgment is reversed and the cause is remanded.