Harry Altschuler, Appellee, v. Herman Sandelman
et al., Defendants.
In re Petition of Chicago Trust Company, Appellant.

Gen. No. 35,278.

Opinion filed December 29, 1931.

DEFREES, BUCKINGHAM, JONES & HOFFMAN, for appellant; DON KENNETH JONES and VINCENT O'BRIEN, of counsel.

H. J. ROSENBERG, for appellee.

Mr. Presiding Justice Gridley delivered the opinion of the court.

In a proceeding to foreclose a second mortgage the court, on March 23, 1931, sustained complainant's general demurrer to the intervening petition of the Chicago Trust Company, the trustee named in the first trust deed or mortgage, and, upon its election to stand by the petition, dismissed it for want of equity. This appeal followed.

Complainant's bill, filed February 18, 1931, prayed for an accounting, a foreclosure and the immediate appointment of a receiver. It is in the usual form and alleged in substance that on November 22, 1928, Sandelman and wife, then the owners of the improved premises in question and being indebted in the sum of $17,500, executed and delivered certain notes,—the last one maturing on June 1, 1930; that to secure the notes they on the same day executed and delivered their trust deed conveying the premises to the Independence State Bank, as trustee, which deed was recorded on December 1, 1928; that complainant is now the legal holder and owner of all of the notes, none of which, although past due, has been paid; that by the terms of the deed the rents and profits of the premises were pledged to secure the indebtedness, interest, costs and solicitors' fees, and that the grantors, upon the filing of any foreclosure bill, waived all right to the possession and to the income of the premises and agreed that without notice a receiver might be appointed; that the premises are scant security for the payment of the indebtedness, and that complainant fears, unless a receiver be appointed, he will lose a part of the indebtedness; and that one Fred Friedman, a bachelor, is the present owner of the equity of redemption. There is no mention in the bill of the existence of any prior mortgage and petitioner, first mortgagee, was not made a party to the bill.

On the following day (February 19), upon complainant's motion, the court ordered that the Cook County Trust Company be appointed receiver, conditioned upon complainant filing a bond in the sum of $200 (which was approved and filed), and said company as receiver took immediate possession of the premises. In the order it is recited that the trust deed provides for the appointment of a receiver, that it is a "junior incumbrance," that default has been made in the payment of the indebtedness secured thereby, that the premises are inadequate security, and that said Friedman is the owner of the equity of redemption and has had due notice of this application. And the court further ordered that all persons in possession as tenants pay rents to the receiver; that those refusing so to do surrender possession to it, and, if this is not done, that it take all necessary legal steps to remove them, etc.; that from the rents received it pay all taxes, keep the building insured, and also pay prior incumbrances and the interest thereon as the same falls due; and that all moneys received by it, less the outlays herein directed and its reasonable expenses, be retained by it subject to the further order of the court.

On February 26, on the receiver's petition the court ordered that it be given leave to employ a named firm of attorneys as its solicitors. From the petition it appears that the premises are located at 4908–14 West Chicago avenue, Chicago, and are improved with a building containing five stores and two apartments.

On March 16, the court, upon the motion of the Chicago Trust Company, as trustee, ordered that it be given leave to file *instanter* its intervening petition "for a rule upon the receiver to surrender the property in its possession, and demanding certain rents," and that complainant and the receiver be given leave to plead to the petition within five days.

In said intervening petition, verified by a vice president of petitioner, it is alleged in substance that on

October 26, 1922, Abe S. Chavin, and Marion his wife, being indebted in the sum of $25,000, executed and delivered their 20 promissory notes, numbered 1 to 20 inclusive, payable to the order of themselves and by them indorsed; that four of the notes were each for $750, of which note No. 1 became due on April 26, 1923, and the others every six months thereafter; that 15 of the notes were each for $500, of which note No. 5 became due on April 26, 1925, and the others every six months thereafter; that note No. 20 was for $14,500 and becomes due on October 26, 1932; that all notes bear interest at the rate of six per cent per annum until maturity and at the rate of seven per cent per annum after maturity; that the instalments of interest, evidenced by coupon-notes, are payable on the 26th days of April and October in each year; that to secure the payment of the indebtedness Chavin and wife, on October 26, 1922, executed and delivered their trust deed whereby they ''conveyed, mortgaged and warranted to petitioner, as trustee,'' the premises described in complainant's bill, ''together with all rents, issues and profits which should after the making of said trust deed accrue from the premises, which said rents and profits were by said trust deed likewise presently assigned and transferred to petitioner as trustee''; that the trust deed was recorded on November 9, 1922 (here set out in full); that each and all of the principal notes and coupon notes ''were sold and delivered to the Western and Southern Life Insurance Company, and the proceeds of the loan evidenced by the notes were duly disbursed and paid to or upon the order of Abe S. Chavin''; and that the trust deed ''became and was and is a valid and subsisting *first and prior lien* and claim upon the premises therein described.''

It is further alleged in substance that said Sandelman and wife became the owners of the premises and executed and delivered their trust deed as set forth in

complainant's bill, and which deed was given to secure their notes as therein set forth; that the Sandelman trust deed "was and is by its terms expressly subject to the first and prior lien of the trust deed" to petitioner, as trustee; that the Cook County Trust Company, appointed by the court as receiver of the premises under complainant's bill, has been acting as such, and has been, and is, collecting the rents of the premises; that on April 26, 1930, there became due and payable principal note No. 15, in the sum of $500, and that on October 26, 1930, there became due and payable note No. 16, in the sum of $500, and also interest notes in the total face amount of $495, but that no provision for the payment thereof was made by Chavin and wife or by Sandelman and wife, or by anyone in their behalf, and that default was made in that regard, which defaults "still continue"; that on April 26, 1931, there will mature, under the terms of petitioner's trust deed, principal note No. 17, in the sum of $500, and interest notes aggregating $480; and that every six months thereafter, to and including October 26, 1932, various principal and interest notes will also mature.

It is further alleged that under the provisions of petitioner's trust deed and on account of said defaults, it, as trustee, "became and is entitled to the *possession*, management, operation and use of the premises, and is entitled to collect, take, use and enjoy the earnings, income, rents and profits therefrom"; that petitioner's rights in this regard "are prior and superior to the rights of all persons, including the Cook County Trust Company, receiver herein"; that the premises "can be managed and operated at substantially less cost and expense by petitioner than by the receiver herein, or by any other receiver or court administration"; that "the net rents, derived and to be derived from the premises, under the administration of the receiver, are and will be insufficient to remove said defaults

prior to April 26, 1931, and that the net rentals from the premises are insufficient to pay the sums required to be paid under said trust deed at the times that said sums become due and payable, and that the right of petitioner to the possession, operation, management and control of said premises is a substantial one and vital to the preservation of the security intended to be effected by petitioner's trust deed''; and that ''it has heretofore elected, and does now elect, *to take possession* of said premises, to manage and operate the same, and to take the rents, issues, income and profits thereof hereafter to accrue, which possession and which rents, issues, income and profits *it demands.*''

The prayer is that petitioner's ''rights and interests as above set forth be determined and adjudged''; that upon such determination the court ''direct that the receiver forthwith surrender to petitioner the premises and all rents accruing therefrom and collected by the receiver subsequent to the filing of this petition''; that the petition ''stand as petitioner's demand for such rents, issues and profits, as well as for the enforcement of its other rights in the premises''; and that petitioner may have such further relief as equity requires.

The theory of petitioner is in substance that, as first mortgagee, its *right* to the possession of the premises, and to collect the rents and profits thereof, is absolute upon its *assertion* of that right; that the court erred in sustaining complainant's general demurrer to the petition,—the well pleaded allegations therein being admitted by the demurrer; and that, if upon a hearing the facts as alleged in the petition are proven, the court should direct the receiver (appointed at the instance of a *second* mortgagee) to surrender possession of the premises to petitioner and permit the exercise by it of its said right. The theory of complainant (as *second* mortgagee) is in substance that, while if petitioner (as first mortgagee) were in *actual* possession

no receiver might lawfully be appointed upon complainant's bill to foreclose its second mortgage (in the absence of fraud or mismanagement on petitioner's part), yet a receiver having been appointed on complainant's bill, and having taken possession prior to the assertion of petitioner's said right to possession, the latter has lost that right, and it can only ask permission of the court to have the receivership extended as to it.

In *Rohrer v. Deatherage,* 336 Ill. 450, 454, 455, it is said (italics ours) :

"In this State a mortgagor is the legal owner of the mortgaged premises against all persons except the mortgagee and his assigns. (Citing cases.) While a mortgage conveys a title as between the mortgagor and the mortgagee, it is only a qualified title as security for the creditor during the existence of the debt, and the mortgagor is regarded as the owner of the land for all beneficial purposes, *subject only* to the *rights of the mortgagee.* (Citing cases.) *After* condition broken, however, the mortgagee is, as between him and the mortgagor, the *owner of the fee.* (Citing *Ladd v. Ladd,* 252 Ill. 43, and other cases.) The mortgagor has the right to sell or make leases of the premises, and his grantee or lessee will have the right of possession until default in the terms of the mortgage, but the mortgagor cannot make a lease of the mortgaged premises which will give greater rights than he himself possesses or will interfere with the *right* of the mortgagee *to enter for condition broken.* After condition broken, ejectment may be maintained by the mortgagee against the mortgagor or those to whom he may have assigned the equity of redemption. (*Taylor v. Adams,* 115 Ill. 570.) Upon default in the condition of the mortgage the mortgagee has the *right* to possession against the mortgagor, his grantee, lessee, or *anyone* claiming under him *by any right.* In such case

the mortgagee has several remedies which he may pursue to enforce the payment of his debt. He may sue the mortgagor in assumpsit for a judgment upon the personal obligation; he may sue in equity for the foreclosure of the mortgage; or he may recover the possession of the mortgaged property by an action of ejectment. These remedies are concurrent or successive, as the mortgagee may deem proper, and he may pursue any two or all three of the remedies simultaneously. (Citing cases.)''

In the cited *Ladd* case, *supra,* it is said (page 46, italics ours): ''While the mortgagor is the legal owner of the mortgaged premises against all persons except the mortgagee (*Seaman v. Bisbee,* 163 Ill. 91), the mortgagee, as against the mortgagor, is held in this State, *as under the common law,* to be the owner of the fee, *entitled to all the rights and remedies which the law gives to such owner.* (Citing cases.)''

In High on Receivers, 4th Ed., sec. 679, the writer says (italics ours):

''Under the English practice, when there are several mortgages of different priority upon the same premises, the first mortgagee, being vested with the legal title and the right to immediate possession, is called the legal mortgagee, and all others are equitable mortgagees or incumbrancers. And the doctrine of the English Court of Chancery, announced in strong terms by Lord Eldon, and which has also been recognized and enforced in this country, was that, as against a prior mortgagee *in possession of the property under his mortgage,* a receiver would never be granted in behalf of subsequent mortgagees, while anything remained due to the prior mortgagee under his incumbrance. In such cases, the only remedy open to the second or equitable mortgagee is to *pay off* the prior incumbrancer and redeem from the lien of his mortgage. The rule is based upon the unwillingness of

courts of equity to interfere with the legal title or with possession under it, and their disinclination to substitute another security for that for which the mortgagee contracted. The courts refuse, therefore, to grant a receiver in this class of cases, or to interfere with the receipt of the rents and profits by the prior mortgagee in possession, since such interference would virtually have the effect of dispossessing him.'' (Citing among others the English case of *Berney v. Sewell,* 1 Jac. & W. Rep. 647.)

This rule, as regards a first mortgagee *in possession,* has been followed substantially in decisions of courts of review in this State. (*Springer v. Lehman,* 50 Ill. App. 139, 143, citing *Bolles v. Duff,* 35 How. Pr. (N. Y.) 481, 483; *Peterson v. Lindskoog,* 93 Ill. App. 276, 281; *Van Ness v. Arado,* 257 Ill. App. 56, 59; *Dickason v. Dawson,* 85 Ill. 53, 55; *Chicago Title & Trust Co. v. Smith,* 158 Ill. 417, 425-6.)

In 3 Jones on Mortgages, 8th Ed., secs. 1937 and 1939, the writer says (italics ours):

''1937. A subsequent mortgagee can not have a receiver appointed to the prejudice of a prior mortgagee to whom something is due, if the prior mortgagee is in actual possession; and whenever an appointment is made, it is *without prejudice to the right* of any such prior incumbrancer *to take possession.* (Citing certain American and English cases, including the English case of *Berney v. Sewell, supra.*) . . . The possession of the prior mortgagee, and his application of the rents to the debt due him, may be as much to the advantage of the subsequent mortgagee as his own would be. If the subsequent mortgagee insists upon obtaining possession himself, his only course is to redeem the estate from the prior incumbrance by *paying it off;* . . .'' (Citing *Trenton Banking Co. v. Woodruff,* 3 N. J. Eq. 210, 212.)

''1939. A court of equity not only respects the actual possession of the prior mortgagee, but *is cautious not*

*to interfere with his rights to take or obtain possession,* if he should desire it. . . ." (Citing *Beverley v. Brooke,* 4 Gratt. (Va.) 187, 209.)

In 1 Wiltsie on Mortgage Foreclosure, 4th Ed., sec. 579, the writer says (italics ours):

"If it appears from the bill that there is a prior mortgagee who is not in possession of the premises, it has been held that the court may, at the instance of subsequent incumbrancers, appoint a receiver in the absence of the prior mortgagee, . . . but such an appointment will, of course, be made *without prejudice* to the right of the first mortgagee *to take possession* of the premises *at any time he may desire.*" (Citing among others the English cases of *Bryan v. Cormick,* 1 Cox Rep. 422, and *Dalmer v. Dashmond,* 2 Cox Rep. 378.)

In *Berney v. Sewell,* 1 Jac. & W. Rep. 647, decided in 1820 and referred to by the writers above mentioned, Lord Eldon said (p. 648, italics ours):

"If a man has a *legal* mortgage, he cannot have a receiver appointed; he has nothing to do but to take possession. If he has only an *equitable* mortgage, that is, if there is a prior mortgagee, then, if the prior mortgagee is *not* in possession, the other may have a receiver, *without prejudice to his taking possession;* . . .

"If you recollect, in Mr. Beckford's case (*Quarrell v. Beckford,* 15 Ves. 377), I went to the very utmost; I said then, that if Mr. Beckford would swear that there was sixpence due to him, I would not take away the possession from him. If there is anything due, I cannot substitute another security for that which the mortgagee has contracted for. . . .

"I remember a case where it was much discussed, whether the court would appoint a receiver when it appeared by the bill that there was a prior mortgagee, who was *not* in possession; I have a note of that case: there Lord Thurlow made the appointment *without*

*prejudice* to the first mortgagee's *taking* possession; and that was afterwards followed by Lord Kenyon."

In *Bryan v. Cormick,* 1 Cox Rep. 422, 423 (cited in 1 Wiltsie on Mortgage Foreclosure, as above, and decided in 1788), it appears that a bill was filed by creditors to have a receiver appointed over certain premises, on which there was a mortgage; that when it was ascertained on the hearing that the mortgagee was *not* in possession, Lord Thurlow stated that "he could see no reason, if the mortgagee had not thought proper to take possession, why the court should not put a receiver on the estate so as that it should be *without prejudice* to the mortgagee's right *to obtain the possession,*" and that "where a receiver has been appointed of a mortgaged estate, the mortgagee not being brought before the court, the mortgagee must apply to the court for liberty to bring an ejectment, which is of course," and that here, "if the receiver is appointed without prejudice to the mortgagee's right, there could be no objection to it"; and that thereupon his Lordship "ordered that a receiver should be appointed without prejudice," etc.

In *Dalmer v. Dashwood,* 2 Cox Rep. 378, 381, 383 (also cited in 1 Wiltsie, etc., as above, and decided in 1793), it appears that the holder of a defaulted annuity, which he was told at the time it was given was the only incumbrance against certain property, ascertained upon investigation that there were five separate mortgages and other annuities prior to his annuity; that he commenced a proceeding for the appointment of a receiver and for an injunction to restrain payment of any of the rents to the mortgagor; that the prior mortgagees were not made parties; and that the defense "was made that a receiver could not be requested until plaintiff redeem the prior mortgages." The court held (p. 381): "This is the proper application to be made by the plaintiffs under the circum-

stances of this case. They are not bound either to redeem the prior mortgages or to make them parties to the suit. They come here against the mortgagor for an equitable execution of a judgment at law. A first mortgagee can give notice to the tenants and impound the rents; but a second mortgagee can only come into this court to prevent any part of the rents going into the pocket of the mortgagor. It is true that a receiver cannot be put upon the estate to the prejudice of the first mortgagee; but the order may be made as between the mortgagor and the second mortgagee, without prejudice to the right of the first mortgagee *to take possession whenever he thinks fit to do so."* And it further appears (p. 383) that a receiver was appointed "without prejudice to any of the mortgagees or other incumbrancers, whose mortgages or incumbrances were prior to the plaintiffs', from taking possession of the said estates, or any part thereof, in case they should be advised so to do."

The two English cases last mentioned are cited and commented upon with approval in *Cortleyeu v. Hathaway,* 11 N. J. Eq. 39, where it is said (p. 42): "Where, upon the application of a subsequent mortgagee, a receiver is appointed, it is without prejudice to any prior mortgagee or other incumbrancer, and the receiver will be directed to keep down the interest upon the prior incumbrances."

We are not advised that the precise question here involved has squarely been decided by the Supreme Court of Illinois, but there are other cases, arising in United States courts, where, under varying facts, the same principles have been enunciated as in said English cases. In *Wiswall v. Sampson,* 14 How. (U. S.) 52, 64, 65, it is said (italics ours):

"The appointment of a receiver is a matter resting in the discretion of the court; and, as a general rule, in making the appointment on behalf of a complainant

seeking to enforce an equitable claim, or a claim which is the subject of equitable jurisdiction, against real estate, *it will take care not to interfere* with the rights of a person holding a prior legal interest in the property. Thus, where there is a prior mortgagee having the legal estate, the court will not, by the appointment of a receiver, deprive him of his *right to the possession;* but, at the same time, it will not permit him to object to the appointment by any act short of a personal assertion of his legal rights, *and the taking of possession himself.* . . . When a receiver has been appointed, his possession is that of the court, and any attempt to disturb it, without leave of the court first obtained, will be a contempt on the part of the person making it. . . . When, therefore, a party is prejudiced by having a receiver put in his way, the course has either been to give him leave to bring an ejectment, or to permit him to be examined *pro interesse suo.* . . . And the doctrine that a receiver is not to be disturbed, extends even to cases in which he has been appointed expressly, without prejudice to the rights of persons having prior legal or equitable interests. And the individuals having such prior interests *must,* if they desire to avail themselves of them, *apply to the court* either for liberty to bring ejectment, or to be examined *pro interesse suo;* and this, though their right to the possession is clear.''

In *Odell v. H. Batterman Co.,* 223 Fed. 292, a case before the Circuit Court of Appeals for the second circuit, it is decided in substance (as appears from syllabi warranted by the opinion):

''A receiver, appointed to take charge of property of a tenant, cannot maintain possession of the leasehold against the landlord, where the tenant had breached the lease, so that the landlord was entitled to declare a forfeiture thereof.

''Where a court of competent jurisdiction has taken possession of property through a receiver appointed

by it, no other court can acquire jurisdiction over the same property, or render any judgment which interferes with the possession, unless the court shall grant leave to sue its receiver; but the court appointing the receiver has ancillary jurisdiction to determine all questions relative to the *possession* of such property, even if it would have no original jurisdiction of those questions.

"It is an *abuse of the discretion* of the court appointing a receiver for a tenant to refuse permission to the landlord to sue in another court, *or to apply to the court appointing the receiver, to recover possession of the property* from the receiver for the tenant's breach of the lease, which entitles the landlord to forfeit it."

And the court in its opinion in the *Odell* case said (italics ours):

(p. 297) "In this case the alleged breach of the lease occurred more than seven weeks before the appointment of the receivers. The landlord's right to end the tenancy was therefore complete, if the allegations are supported by the facts, before the receivers came into possession of the property. *The receivers have no greater rights in the property* than the insolvent corporation itself possessed. The appointment of the receivers *in no wise abrogated the contract.* And if under the lease, after breach, the landlord is entitled upon giving proper notice to the immediate possession of the property as against the tenant, he certainly must have the same right as against the receivers. *Receivers are not appointed to keep persons out of their rights.* The law does not tolerate so rank an injustice." (Citing *Eyton v. Denbigh, etc. R. Co.,* L. R. 6 Eq. 14, 16 (1868); *Park v. New York, L. E. & W. R. Co.,* 57 Fed. 799, 802.)

(p. 299) "As we have pointed out in an earlier part of this opinion, the order made by the court below was in effect a refusal to allow the landlord to have his

claim adjudicated. The terms of the order clearly indicate that the court below has no intention to allow the receivers to be disturbed in their possession of the property. We think this an abuse of the court's discretion. The landlord has a right, which the court cannot properly disregard, to have its *claim to the possession* of this property passed upon and determined, and, if found to be valid, it has a right to be restored to the immediate possession of the property. That right the court must recognize and protect, notwithstanding the existence of the receivers and the creditors.''

(p. 299) ''It is not for us here and now to determine whether upon the facts the landlord is or is not entitled to judgment of ouster and to be put into possession of the property. It is enough for the present purpose to know that appellant has stated a good prima facie cause of action, and that no sufficient reason exists for denying it the right to sue the receivers as well as the defendant in an action of ejectment.''

After considering the allegations of petitioner's intervening petition, and reviewing the authorities as above outlined and other adjudicated cases, we are of the opinion that the court erred in sustaining complainant's demurrer to said intervening petition and in dismissing it for want of equity. And we do not think that there is any merit in the contention or theory of complainant's counsel in substance that, because the receiver (appointed at complainant's instance) took possession of the premises *before* petitioner (first mortgagee) took steps to assert its right to the possession of the premises, petitioner has lost that right, and can only have, upon its motion, said receivership extended as to it. Under the authorities above cited we fail to see that there is any material difference or distinction between the rights of a first mortgagee, *in possession* of premises *prior* to an appointment or attempted appointment of a receiver at the instance of

a junior mortgagee, and the rights of a first mortgagee not asserted until *after* a receiver has been appointed and is in possession, at the instance of a junior mortgagee. As we read the authorities such an appointment can only be made *without prejudice* to the right of such first mortgagee to the possession of the premises, if he sees fit within a reasonable time to assert that right.

The order or judgment of the superior court, sustaining complainant's demurrer to petitioner's intervening petition and dismissing it for want of equity is reversed, and the cause is remanded with directions to the superior court to overrule said demurrer and for further proceedings not inconsistent with the views herein expressed.

*Reversed and remanded with directions.*

KERNER and SCANLAN, JJ., concur.