Sigmund Wolkenstein, Appellee, v. Joseph Slonim et al., Defendants.
Appeal of Chicago City Bank and Trust Company, Appellant.

Gen. No. 36,496.

474

Opinion filed April 24, 1933.

RATHJE, WESEMANN, HINCKLEY & BARNARD, for appellant; FRANCIS E. HINCKLEY, of counsel.

HYMAN J. ROSENBERG, for appellee; ABRAHAM MILLER and BYRON C. SHARPE, of counsel.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

By this appeal the Chicago City Bank & Trust Company, trustee in a trust deed given to secure the payment of an indebtedness, seeks to reverse an order or decree of the circuit court of Cook county refusing to order the receiver, appointed in a foreclosure suit of a junior mortgage, to surrender possession of the property to it.

October 21, 1932, Sigmund Wolkenstein filed his verified bill to foreclose a second mortgage dated December 10, 1926, on certain real estate in Chicago,

given to secure payment of $10,000, on which there was a balance due and unpaid of $1,250. It was alleged there was another trust deed on the property superior to complainant's lien, on which there was an unpaid balance of $46,000 and on which there was a default of $1,000 on account of principal and $1,380 for interest; that certain taxes were due and unpaid; that the premises were improved with a three-story brick building containing 15 apartments, and that the fair cash market value of the entire property was $45,000. The bill prayed for a receiver and a foreclosure of the mortgage. The parties interested in the first mortgage were not made parties defendant. The trust deed which was made a part of the bill recited that it was subject to a first trust deed dated October 1, 1925, given to secure an unpaid balance of $58,000. It bore a rubber stamp legend stating that it was subject to another trust deed dated October 15, 1930, and it was alleged the last mentioned trust deed was given to secure an indebtedness of $47,000 on which there was a balance due of $46,000, as above mentioned.

October 24, 1932, three days after the bill was filed, on motion of complainant a receiver was appointed; the next day the receiver accepted the appointment and the day following filed its bond and entered upon the discharge of its duties. October 29, by leave of court, the Chicago City Bank & Trust Company, as trustee named in the trust deed which was a first lien on the property, filed its intervening petition, which was duly verified, in which it set up the making by the mortgagor of the trust deed given to secure the $47,000 indebtedness, and that the rents and profits as well as the property were pledged to secure payment of the indebtedness. It was further alleged there was default in payment of $1,000 on account of principal and $1,380 on account of interest; that the trust deed sought to be foreclosed by complainant was junior and inferior to petitioner's; that, by virtue of the defaults,

the petitioner, under the provision of the trust deed, was entitled to the possession and control of the premises, and a request was made that an order be entered that the receiver turn over the property to the petitioner; that the petitioner could control and operate the property as mortgagee in possession at an expense not to exceed four per cent of the gross rents, while the receiver could not do so for less than 10 per cent of the gross rents. It was further alleged that on October 24, 1932, three days after the bill in question was filed, certain owners of the $47,000 indebtedness secured by the trust deed had filed their bill in the superior court of Cook county to foreclose that trust deed, which suit was still pending. November 1, 1932, an order was entered, on motion of the receiver, authorizing him to employ counsel.

November 7, Sigmund Wolkenstein, complainant, and the receiver, filed their separate unverified answers to the petition. In his answer complainant denies, *inter alia,* that his trust deed is junior and inferior to the petitioner's trust deed, but admits that his lien is junior and inferior to the lien of petitioner; denies the petitioner is entitled to possession of the property; admits the filing of the bill in the superior court to foreclose the first lien, and avers that complainants in that bill prayed for the appointment of a receiver, which motion was still pending and undisposed of. The answer then makes the complainant's bill a part of the answer to the petition and denies that the property should be turned over by the receiver to the petitioner. The answer of the receiver denies that the trust deed mentioned in the intervening petition gives the trustee the right to take possession of the premises without any order of court, but avers that the only remedy provided in the trust deed is that the trustee may, in a proper case, apply for the appointment of a receiver in a court of equity. There was a hearing on the petition and answers, the prayer

of the petition was denied, the petition dismissed, and this appeal prosecuted.

In support of its contention that the decree dismissing its petition is wrong and should be reversed, reliance is chiefly placed on the cases of *Altschuler v. Sandelman*, 264 Ill. App. 106, and *Consumers Bond & Mortgage Co. v. Sadin*, 266 Ill. App. 141. The holding in each of these cases is that where a receiver is appointed in a suit to foreclose a junior mortgage, the trustee of a prior mortgage, which is a first lien on the property, may intervene and have the receiver turn the property over to him. *Firebaugh v. Seegren*, 269 Ill. App. 47. In the instant case counsel for the petitioner say that the *Altschuler* and *Consumers Bond, etc.* cases are directly in point, sound in reason, and should be followed. The chancellor was of the opinion that the holding in those two cases was founded in the main upon English authorities, which materially differ from the holding of our Supreme Court in foreclosure cases. The chancellor in his opinion said, among other things: "despite the rights granted in the contract creating the lien, where the parties specifically grant the right for the appointment of a receiver, nevertheless, once the case is in a court of chancery, that court will look to the equities and will not appoint a receiver and will not disturb the possession of the mortgagor if it appears that the property is ample security for the debt.

"Now, is it conceivable that where that becomes a policy of courts, that they will allow the parties, without the showing of the insufficiency of the security, in a case where the security may be two or three times as great as the amount of the debt, to simply go in there and take physical possession?" And that once a court of chancery takes possession of the property and any one interferes, he must do equity; that under the stress of the times the arbitrary right of a trustee in a trust deed to take possession of the property ought

to be discouraged; that subordinate liens ought not to be placed at the mercy of the superior lien so as to deprive the former of its right to come into a court of chancery on condition broken, and have the property so administered that it may receive what is left after paying the prior incumbrances. We are in accord with these views.

It has often been held that a court of chancery is not bound to appoint a receiver in a foreclosure suit merely because the trust deed provides for the appointment of a receiver in case of default, that the court will look to the equities in the case; and that such a provision in a trust deed or mortgage is entitled to weight in determining whether the court should appoint a receiver. *Bagley v. Illinois Trust & Savings Bank,* 199 Ill. 76; *Bothman v. Lindstrom,* 221 Ill. App. 262; *Frank v. Siegel,* 263 Ill. App. 316. We think this same rule should apply when a trustee in a trust deed which is a first lien on the premises, intervenes in a foreclosure suit involving a junior lien, and requests that the property be turned over to him.

In the instant case, according to the allegations of complainant's verified bill, there is an incumbrance of $46,000, which is a lien prior to that of complainant's; that default has been made, of which $1,000 principal and $1,380 interest are due and unpaid; that general taxes are due and unpaid and that the property is not worth more than $45,000. In these circumstances we think the equities are in favor of the trustee. The probabilities are that in case of a decree of foreclosure and sale, the property would not bring enough to pay the first lien and therefore the costs and expense of a receivership ought not to be incurred.

The mortgagor is the legal owner of the mortgaged property as against all persons except the mortgagee or his assigns, and after condition broken he may maintain an action of ejectment. *Oldham v. Pfleger,* 84 Ill. 102. "The fee title held by the mortgagee is in

the nature of a base or determinable fee. The term of its existence is measured by that of the mortgage debt. When the latter is paid or becomes barred by the Statute of Limitations the mortgagee's title is extinguished by operation of law. . . . Until it is extinguished the legal title is in the mortgagee for the purpose of obtaining satisfaction of his debt." *Ware v. Schintz,* 190 Ill. 189; *Lightcap v. Bradley,* 186 Ill. 510.

In the *Lightcap* case last cited, Mr. Justice Cartwright in speaking of the harshness of strict foreclosures said (pp. 519-20): "Equity assumed jurisdiction to relieve the mortgagor against a forefeiture upon default, and he was relieved from it on payment of the debt. (1 Jones on Mortgages, sec. 8.) Courts of law, following the lead of courts of equity, have adopted many equitable principles as to the titles of the respective parties, and at law the title of the mortgagee can be used only for the purpose of securing his equitable rights under it. 'As to all persons except the mortgagee and those claiming under him, it is everywhere the established modern doctrine that a mortgagor in possession is at law, both before and after breach of the condition, the legal owner.' (1 Jones on Mortgages, sec. 11.) . . . This State has adhered to the rule that at law a title vests in the mortgagee, but only for the protection of his interests. For the purpose of protecting and enforcing his security the mortgagee may enter and hold possession by virtue of his title and take the rents and profits in payment of his mortgage debt. He may maintain the possessory action of ejectment on the strength of such title, but the purpose and effect of the action are not to establish or confirm title in him, but, on the contrary, to give him the rents and profits which undermine and destroy his title. . . . When the rents and profits have paid the mortgage debt, both the title and right of possession of the mortgagee are at an end."

The court then discusses the interest of the mortgagor in the mortgaged land, and said (pp. 520–521): "the earliest doctrine in England settled that the whole legal estate was in the mortgagee, but that the strictness of the law has yielded to the principle of justice and equity, and the doctrine held in the United States in regard to the estate of the mortgagor is, that he is to be treated as the real owner of the estate for all beneficial purposes, subject only to the rights and encumbrance of the mortgagee." The court then referred to another Illinois case and continuing said: "After referring to the common law rule that the mortgagee held the legal title in fee and that the mere equitable right of the mortgagor could not be sold on execution, . . . 'But many of the States—and ours of the number—have, by enactment, made great modifications of the rule. Our legislature at an early day provided that when the mortgagor paid and satisfied the debt and the mortgage had been recorded, he might compel the mortgagee to enter a satisfaction of the mortgage on the margin of the record, which should operate as a discharge and release of the same and forever bar all actions that might be brought thereon. . . . This was a most material modification of the common law rule, as it reinvested the mortgagor with the title simply by the mortgagee stating, over his signature, on the margin of the record, that he had received satisfaction of the debt, and dispensing with a release or re-conveyance for the purpose.'" The court further discusses Illinois authorities, all to the effect that the law in this State is different from the law of England.

Where a mortgagee is in possession and it is contended that he has managed the property inefficiently or has refused to account, a court of equity will require him to render an account of his acts and doings. *Oldham v. Pfleger, supra* (84 Ill. 102). In *Firebaugh v. Seegren, supra* (269 Ill. App. 47), this court ordered

the property in foreclosure to be taken out of the trustee's hands and placed in the hands of a receiver. There it appeared that the trustee named in a trust deed given to secure an indebtedness took possession of the property and operated it. Thereafter he filed a bill praying for a foreclosure of the trust deed. Later some of the parties in interest filed a petition for the appointment of a receiver to take possession of the property from the trustee, and it was shown that the trustee had not properly managed the property; the court appointed a receiver, ordered the trustee to turn over the property and this order was upheld. There the equities were considered and applied. And in *Erickson v. Ehresman,* 269 Ill. App. 343, the trustee of a trust deed given to secure an indebtedness petitioned the court to discharge the receiver appointed in a creditor's bill, and that the property be turned over to the trustee. The prayer of the petition was denied, and upon appeal to this court the order of the chancellor was affirmed on the ground that since the trustee, on his own petition and motion, had had the receivership extended to protect his interests, he would not be permitted thereafter to seek the removal of the receiver. In the case of *Karsh v. Glicksberg,* 269 Ill. App. 638, a receiver was appointed in a suit to foreclose a second mortgage and afterward the trustee of a prior trust deed petitioned for a writ of assistance to oust one of the owners of the equity occupying an apartment in the building and a tenant occupying another apartment, we affirmed the order denying the writ on the ground that it was the duty of the trustee, under the allegations of his petition, to endeavor to collect all the rents he could from the premises so as to reduce the indebtedness, and that he had made no showing that the two parties occupying the apartments were objectionable as tenants or that they had refused to pay the rent to him.

From the foregoing authorities it appears that whether a trustee in a trust deed, or a receiver in a foreclosure proceeding, is entitled to the possession of incumbered property, the equities of the situation in each case must be considered. So, in the instant case, we think the equities are on the side of the trustee. Complainant's sworn bill shows that taxes are unpaid, that there is a default on account of principal and interest due under the first mortgage, and that the property is not worth the amount of the first mortgage and costs. Under these circumstances there is no reason for incurring the expense of a receivership, especially where the trustee offers to manage the property for less than the cost of receivership.

Complainant contends that under the terms of the trust deed to the Chicago City Bank & Trust Company, it is not entitled to take possession of the premises but is entitled to have a receiver appointed only upon default. By the terms of the trust deed, the premises, as well as the rents, issues and profits, were conveyed to the Chicago City Bank & Trust Company, and the fact that the trust deed provided that upon default a receiver might be appointed to collect the rents during the pendency of such foreclosure and until the period of redemption should have expired, was not the only remedy given to the trustee to collect the rents. Under the authorities, after condition broken the mortgagee is, as between him and the mortgagor, the owner of the premises and can take possession of them and collect the rents until the debt is paid. *Lightcap v. Bradley, supra* (186 Ill. 510); *Rohrer v. Deatherage,* 336 Ill. 450.

We think there is no merit in the further contention made by complainant that the legal title to the property is in the trustee, securing the indebtedness he seeks to foreclose, because that trust deed is dated December 10, 1926, while the trust deed representing the first lien on the premises is dated October 15, 1930,

for two reasons: first, the trust deed of 1930 was executed to take the place of a trust deed given in 1925 to secure $58,000 indebtedness above mentioned; and the trust deed of 1926 expressly states that it is subject to the unpaid balance of the $58,000, payment of which was secured by the trust deed of 1925. And, further, there is a rubber stamp legend on the trust deed of 1926 in which it is expressly stated that that trust deed is subject to the lien of the trust deed of 1930. Moreover, complainant in his bill alleges that the incumbrance secured by the trust deed which seeks to foreclose is subject to the balance unpaid on the $47,000; and also there appears in the record a document signed by the trustee of the trust deed which expressly subordinates the lien of complainant to that of the unpaid balance of $47,000.

In the *Altschuler* and *Consumers Bond* cases (264 Ill. App. 106, and 266 Ill. App. 141), no facts appear which would indicate whether the equities were in favor of the trustee or of the receiver, and therefore the terms of the trust deed giving right to the trustee were enforced. In the instant case the equities, as above discussed, are all in favor of the trustee, and in view of this fact and in view of the provision of the trust deed, the property should be turned over to the trustee.

For the reasons stated the order of the circuit court of Cook county is reversed and the matter remanded with directions to enter an order in accordance with the views stated in this opinion.

*Reversed and remanded with directions.*

McSurely, P. J., and Matchett, J., concur.