## Central Republic Trust Company, Appellant, v. Petersen Furniture Company, Appellee.

### Gen. No. 37,861.

Opinion filed April 1, 1935. Rehearing denied April 15, 1935.

DEFREES, BUCKINGHAM, JONES & HOFFMAN, of Chicago, for appellant; DON KENNETH JONES and THOMAS R. MULROY, of Chicago, of counsel.

Samuel Petersen and Lewis S. Eaton, both of Chicago, for appellee.

Mr. Justice Matchett delivered the opinion of the court.

This suit is in assumpsit on a lease under seal for rent. The facts are not in controversy.

The premises are known as 1651–59 West Ogden avenue, in Chicago. March 10, 1926, the owner trustees leased the premises to defendant, Petersen Furniture Company, for a period of 15 years. The total rent reserved was $172,200, payable in monthly instalments of $500 until May 31, 1928, $700 from June 1, 1928, to May 31, 1931, $1,000 from June 1, 1931 to May 31, 1936, and $1,250 from June 1, 1936, to May 31, 1941. July 31, 1926, the premises were conveyed to Ralph W. Hartwig. August 1, 1928, Hartwig and his wife conveyed the premises by trust deed to the Cody Trust Co. to secure a loan of $70,000. Thereafter, on August 20, 1928, Hartwig and his wife conveyed the premises subject to the trust deed to the Chicago Title & Trust Co. as trustee under Trust No. 12806. May 20, 1932, the Chicago Title & Trust Co., as trustee, conveyed the premises to Miles E. Barry.

June 6, 1932, defendant entered into an unrecorded agreement with Barry, by which the original lease of March 10, 1926, was canceled as of November 30, 1932, in consideration of $6,000. Defendant Furniture Company made no investigation of the title held by Barry other than inquiries of him and of his agents. The evidence, however, shows that the original lease was presented by Barry at this time. August 1, 1932, default was made in the payment of interest upon the indebtedness secured by the trust deed of August 1, 1928. August 8, 1932, the Cody Trust Co. made a written demand on defendant for all rents thereafter

accruing. No rent was paid, and this suit was then brought in assumpsit to recover the rent for September, October and November, 1932, amounting to $3,000. Defendant pleaded the general issue and a special plea that on June 6, 1932, he entered into an agreement under seal with "the owner" of the premises, whereby the lease for a consideration of $6,000 was canceled, and that he thereafter surrendered possession of the premises and was therefore not indebted.

Plaintiff moved to strike the affidavit of merits. The motion was denied, and plaintiff has caused the proceedings to be preserved by a bill of exceptions. The Cody Trust Co. having resigned, the Central Republic Trust Co. was appointed its successor and substituted as plaintiff in the suit.

The cause came on for trial March 30, 1934, the court found the issues for defendant, plaintiff moved in arrest of judgment, which was denied, and final judgment was entered in favor of defendant. Plaintiff has perfected this appeal from that judgment.

The question for decision is whether a lessee of premises which were subsequently conveyed, together with rents, issues and profits, as security for a debt may (before default) by agreement with the owner of the reversion pay the rent in advance and cancel the lease, in the absence of a notice from the mortgagee of his intention to appropriate the rents to his debt.

The answer to this question must depend upon the nature of the interest taken by the grantee in a conveyance of land by way of mortgage—a matter which has been the subject of conflicting decisions in many jurisdictions. In Pomeroy's Equity Jurisprudence, 4th ed., vol. 3, sec. 1179, p. 2784, the author points out that the distinctive feature of the English law on this subject (prior to the passage of the judicature acts 36 and 37, Victoria, ch. 66, secs. 24 and 25) was that the legal title to the premises by means of the mortgage

conveyance was both in law and in equity transferred to the mortgagee. The judicature acts by the provision that rules of equity should prevail over rules of law when conflicting necessarily modified that prior purely legal theory of mortgages in England. For this reason the earlier English authorities on this subject are unreliable.

In most of the American States the law on this subject has been developed uninfluenced by the decisions of the English courts. In some of the States the legal theory obtains. In such jurisdictions usually the mortgagee takes the legal title with its incidents, including the right to appropriate the rents. In others the equitable theory is adopted. In such States it is held that the mortgage is a mere conveyance as security; that the mortgagor retains the legal right and the mortgagee has only a lien on the premises conveyed as security for his debt. The difference between these two theories is well explained in Jones on Mortgages, 8th ed., vol. 2, par. 978, pp. 361, 362. The author states:

"A lease already existing at the date of the mortgage is in no way invalidated by the giving of the mortgage. It is then a paramount interest, and the mortgage is subject to it. The mortgagee has only the right of the mortgagor as against the lessee.

"In jurisdictions holding that the mortgagee has the legal title, the effect of a mortgage given subsequent to a lease will be to make the mortgagee the reversioner and landlord in place of the mortgagor. But in jurisdictions where the mortgage does not transfer the legal title to the mortgagee the execution of a subsequent mortgage can have no such effect. In order to be entitled to the benefits of a lease made by the mortgagor, or to collect rents thereunder, the mortgagee must have obtained actual possession of the premises, or entered for the purpose of foreclosure

upon breach of condition, or accepted the lessee as his tenant by attornment, or procured the appointment of a receiver.

"The mortgagor may, of course, at the time of making a mortgage of the reversion, release the tenant from the payment of the rents accrued at that time; but otherwise the rent then accruing goes with the reversion, and the mortgagee is entitled to it if he gives the tenant notice before the rent day."

In Reeve Illinois Law of Mortgages and Foreclosures, vol. 1, pp. 3 to 10, the author describes the common law and equitable theories, notes the influence of the civil law upon the common law, including the borrowed conception that a mortgage is a mere lien or security and points out that in Illinois neither the legal theory of mortgages nor the lien theory prevails, but that the common law doctrine as modified by equitable principles is in force. The author says:

"The law courts, following the rule first set up in equity, also have come to recognize mortgages of all kinds to be exactly what they are—mere securities. The title may be differently regarded and differently treated in different forums, but the actual fact that, until foreclosure has been in some way had, the mortgagor has an interest in the property, is recognized at law as well as in equity. While courts have spoken and frequently do speak of the title of the mortgagee being absolute after default, they do not mean that the ownership of the mortgagee is absolute. Nowhere is it now held that, upon forfeiture, the mortgagee may sell the property, give it away, or destroy it, without reference to or consideration for any right or interest of the mortgagor.

"Under this doctrine a mortgage is regarded as a mere security and as no more than an incident to the debt or principal obligation; yet it confers the right to reduce the premises to possession as a means of obtaining satisfaction of the debt, and to render this

right effective, ejectment will lie against the mortgagor at any time when a recovery may be had on the debt.''

It is apparent that if the conception that a mortgage merely conveys a lien or security is to obtain there would be no privity of contract between a prior lessee of premises with the subsequent mortgagee of the same premises, and that the mortgagee could therefore not sue the lessee to recover rent. Where the mortgage, however, is held to have conveyed the legal estate by virtue of the provisions of the statute of 32 Henry VIII, ch. 34, secs. 1–5, the conveyance of the reversion effects an assignment of the rents (and by virtue of the statute of 4 and 5 Anne, ch. 16, sec. 9, the necessity of attornment having been dispensed with) the holder of the reversion can maintain an action for the rent. These English statutes have been re-enacted substantially in Illinois as sections 14 and 15 of the Landlord and Tenant Act. (Cahill's Ill. Rev. Stats. 1933, ch. 80, ¶¶ 14 and 15, p. 1748; *Barnes v. Northern Trust Co.*, 169 Ill. 112.) It is apparent therefore that the question of whether the mortgagee here can recover the rents depends upon whether the interest in the land conveyed by mortgage is such as to draw to it and make applicable the provisions of these two sections.

In Tiffany on Landlord and Tenant, vol. 1, sec. 146e, p. 872, the author says:

''The landlord, whether the original lessor or his transferee, may execute a mortgage upon the land, which, like an absolute conveyance, will ordinarily be subject to the prior lease, that is, it will not affect the right to possession under the lease. In jurisdictions where a mortgage transfers the legal title, the effect will be to make the mortgagee the reversioner and the landlord in place of the mortgagor. In other jurisdictions it can have no such effect.'' A note to *Glidden v. Second Ave. Invest. Co.*, L. R. A. 1915 C, p. 200,

considers the effects of transfers by way of mortgage as to prior leases. It says:

"In jurisdictions where a mortgage creates only a lien to secure a debt, and does not pass title until default, foreclosure, and sale, no question can arise prior to foreclosure in case the reversion is covered by a mortgage given pending the lease, since there is no transfer of the reversion. . . .

"But where a mortgage passes title to the mortgagee, subject to defeat by payment of the debt, a mortgage executed by the lessor after the execution of the lease transfers the reversion to the mortgagee. In such case the mortgagee, as transferee of the reversion, becomes the landlord to the lessee, upon giving notice to the latter of the transfer, and of his desire to receive the rents, etc." In support of this statement the note cites *Moss v. Gallimore,* 1 Dougl. K. B. 279, 18 Eng. Rul. Cas. 404, which is followed by the later case of *DeNicholls v. Saunders,* L. R. 5, C. P. 589, upon which the plaintiff here strongly relies.

Early Appellate Court opinions in this State are not in entire harmony. Apparently some follow earlier cases which held that a conveyance by way of mortgage transferred a fee in the land. In *Scheidt v. Belz,* 4 Ill. App. 431, plaintiff sued upon a lease assigning as breach that defendant did not pay the rent, etc. Defendant asked leave to file pleas which set up that after the execution of the lease the lessors conveyed to Belz and assigned to him the lease declared on, and that defendant thereafter paid the rent to him as the assignee of the reversion. The court refused leave. The opinion of the court points out the statute of Henry, saying that the evidence showed that the lessee had attorned, which was then necessary (*Fisher v. Deering,* 60 Ill. 114) and reversed the judgment. It was urged that the deed to Belz was in fact a mortgage. The opinion says:

"Even if this were so, a mortgagee of the reversion stands in the same position as a grantee, and is en-

titled to the rents if he elects to take them, and can after attornment sue for and recover them from the tenant; 4 Kent Com. 164–354; *King v. Housatonic R. R. Co.*, 45 Conn. 226; *Moss v. Gallimore*, Doug. 279; especially in this case, as he was to receive the rents to apply on the indebtedness, if in fact the conveyance was designed as a mortgage.''

In *Disselhorst v. Cadogan*, 21 Ill. App. 179, certain heirs of William Cadogan, who had demised the premises to defendant, sued for the rent. The lessee had paid this rent to the grantee of a purchaser under partition proceedings. Plaintiffs recovered, but the judgment was reversed, the opinion stating:

''It is elementary law that rent is an incident of the reversion. An unqualified grant of the demised premises passes the rent thereafter accruing. *Crosby v. Loop*, 13 Ill. 625; *Dixon v. Niccolls*, 39 Ill. 372; *Hardin v. Forsythe*, 99 Ill. 312; *Epley v. Eubanks*, 11 Ill. App. 272. A conveyance by operation of law, or under a trust deed or power of sale in a mortgage, or by a Master or Sheriff under a decree or execution that is valid against the lessor, will be as efficacious as a deed from him directly. Whatever unqualifiedly passes his reversion will pass the rent thereafter accruing. *Carson v. Crigler*, 9 Ill. App. 83; *Epley v. Eubanks*, 11 Ill. App. 272.''

In *Reed v. Bartlett*, 9 Ill. App. 267, the owner, Oliver Woolf, executed a mortgage to one Gulliver and thereafter conveyed the premises to John Woolf and F. G. Garfield, who leased it to defendant who went into possession and occupied until January 5, 1880, when he surrendered the same to the lessor. In the meantime Gulliver foreclosed. August 28, 1879, the property was sold to one Hitchcock, who thereafter took out a deed to the premises. In September Hitchcock went on the premises, notified defendant, and verbally demanded that he surrender the same, which he refused to do. Defendant also refused to pay rent. Hitchcock began suit and afterward conveyed the

premises to plaintiff, to whom he gave an order on defendant to pay the rent. There was a trial by jury and verdict for defendant, on which judgment was entered. The judgment was affirmed by the Appellate Court. The court said:

"The purchaser at the mortgage sale became the owner of the premises in fee; and could have treated the occupant as a trespasser and recovered the possession by ejectment without notice, or in forcible detainer under the statute, and when evicted under the paramount title of the mortgagee neither the mortgagor or his lessee would be entitled to the emblements. . . .

"But the purchaser cannot distrain for rent, or bring an action to recover it, unless the tenant has attorned to him, as the relation of landlord and tenant does not exist between them."

In *David Bradley & Co. v. Peabody Coal Co.*, 99 Ill. App. 427, it appeared that Bradley & Co. had leased certain premises in Council Bluffs, Iowa, for a term of eight years from one Wright, the rental to be paid at specified periods with the exception of one instalment for which no time for payment was agreed upon. Wright executed a mortgage to Peabody, the president of the Peabody Coal Co. Wright defaulted. The mortgagee foreclosed. The mortgagee did not redeem. A deed issued to the coal company, assignee of the mortgagee. Prior to the execution of the deed the instalment of $1,000 rent had been paid in advance to Wright by Bradley & Co. Whether the payment was made before or after the foreclosure sale did not appear. No notice of the foreclosure proceedings had been given to Bradley & Co. The Peabody Coal Co. sued Bradley & Co. for this instalment of rent and in the lower court recovered judgment. This court held that the payment was proper and reversed the judgment. The opinion said:

"We have no doubt as to the effect of the mere giving of the mortgage. It imposes no limitation upon

the right of lessor (who was the mortgagor of the reversion) to receive, or the right of the lessee to make, payments in advance or otherwise, of the rent provided by the terms of the lease. If a mortgagee can be held to be a grantee of the reversion in whom the right to rents under the lease vests by force of the statute, as held in *Scheidt v. Belz,* 4 Ill. App. 431, yet, as suggested in that case, his right would only operate upon the lessee after he had notified the lessee that he elected to claim the rents as mortgagee. A somewhat different question arises as to the effect of the foreclosure sale. But we think that the sale could not affect the relation of appellant as lessee to Wright as lessor, to make payments of rent ineffectual when made after such sale, unless a notice of the sale was given to appellant. . . .

"We are therefore of opinion that appellee acquired no right to the rent in question by reason of the mortgage or the sale upon foreclosure of the same, unless a notice of claim to rents under the mortgage or notice of sale was given to appellant."

The history of the development of the law of mortgages in Illinois has been written so often that it would be superfluous to repeat it. The evolution of the law of this State from *Fitch v. Pinckard,* 4 Scam. (Ill.) 69, is covered by the opinion of Justice Cartwright in *Lightcap v. Bradley,* 186 Ill. 510. In that case the nature of the right of a mortgagee who had purchased the land under foreclosure was discussed. The opinion states:

"The purchaser of land under an execution of the foreclosure of a mortgage has no legal title, or right to be invested with a legal title, until the time allowed for redemption has expired. (*Rockwell v. Servant,* 63 Ill. 424.) The certificate of purchase confers on the holder no title in the land. (*Huftalin v. Misner,* 70 Ill. 55.) In *Hays v. Cassell,* 70 Ill. 669, it was said (p. 672): 'The certificate of purchase conveyed no

title to the purchaser, nor did it disturb the possession of the defendant. That still continued in him, and would so remain until fifteen months had elapsed and his title transferred by the sheriff's deed.' ''

In *Williams v. Williams,* 270 Ill. 552, the opinion states:

''It is true, as plaintiffs in error contend, that in the case of a common law mortgage the mortgagor is the legal owner of the mortgaged property as against all persons except the mortgagee or his assigns. (*City of Chicago v. Sullivan Machinery Co.,* 269 Ill. 58.) The mortgagor's interest in the land may be sold under execution; his widow is entitled to dower in it; it passes as real estate by devise; it descends to his heirs as real estate upon his death, intestate; he may maintain an action for the land against a stranger and the mortgage cannot be set up as a defense. On the other hand, the mortgagee has no such estate as can be sold under execution; his widow has no right to dower in it; upon his death the mortgage passes to his personal representative as personal estate and passes by his will as personal property. The mortgagor may convey his title or mortgage it to successive mortgagees, and his grantee or mortgagee will succeed to his estate and occupy his position, subject to the incumbrance. (*Lightcap v. Bradley,* 186 Ill. 510.)''

In the later case of *Rohrer v. Deatherage,* 336 Ill. 450, the relation of mortgagor and mortgagee where the rents are pledged as part of the security is specifically discussed. The opinion states:

''The first proposition of the plaintiff in error that the inclusion in the Rohrer mortgage of the rents, issues and profits of the land, with the land itself, would not alone deprive the mortgagor of the right to receive the rents for his own use until the mortgagee took some steps to enforce his lien upon the rents and profits, is a correct statement of the law and is supported by the authorities cited. The mortgagor is entitled to his rents until a receiver is actually appointed, and the re-

ceiver cannot collect rents already paid to the mortgagor. . . . After condition broken, however, the mortgagee is, as between him and the mortgagor, the owner of the fee. . . . The mortgagor has the right to sell or make leases of the premises, and his grantee or lessee will have the right of possession until default in the terms of the mortgage, but the mortgagor cannot make a lease of the mortgaged premises which will give greater rights than he himself possesses or will interfere with the right of the mortgagee to enter for condition broken. After condition broken, ejectment may be maintained by the mortgagee against the mortgagor or those to whom he may have assigned the equity of redemption." Pointing out the rights of a mortgagee after default as distinguished from those which existed before default, this opinion further states:

"Upon default in the condition of the mortgage the mortgagee has the right to possession against the mortgagor, his grantee, lessee or anyone claiming under him by any right. In such case the mortgagee has several remedies which he may pursue to enforce the payment of his debt. He may sue the mortgagor in assumpsit for a judgment upon the personal obligation; he may sue in equity for the foreclosure of the mortgage; or he may recover the possession of the mortgaged property by an action of ejectment. These remedies are concurrent or successive, as the mortgagee may deem proper, and he may pursue any two or all three of the remedies simultaneously."

In a later case the right to bring forcible entry and detainer to get possession, has been added. *West Side Trust & Savings Bank v. Lopoten,* 358 Ill. 631. The interest taken by a mortgagee has been also discussed in the recent case of *Wolkenstein v. Slonim,* 355 Ill. 306, affirming 270 Ill. App. 473, where the court said:

"A mortgage conveys title as between the mortgagor and the mortgagee, but it is only a qualified title as security for the creditor during the existence of the debt. The mortgagor is regarded as the owner of

the land for all beneficial purposes, subject only to the rights of the mortgagee. After condition broken, the mortgagee is, as between himself and the mortgagor, the owner of the fee, and he may maintain ejectment against the mortgagor or the owner of the equity of redemption. Upon default he has the right to possession against the mortgagor, his grantee, or anyone claiming under him by any right.''

To sum up, it would appear the result of all the Illinois cases is that a mortgagee, so long as the mortgagor keeps the covenants of the conveyance, has nothing more than a lien upon the land for the security of his debt; that after condition broken, that is, upon failure to keep the covenants, the lien is converted into a legal estate, and the mortgagee becomes to all intents and purposes both in law and in equity the owner of a determinable fee. *Wolkenstein v. Slonim*, 270 Ill. App. 473. If this is a correct view of the situation, we think it follows that since the conditions of the mortgage had not been broken prior to the time defendant paid the rent to the holder of the equity, and since the mortgage was subsequent in point of time and therefore subordinate to the lease, defendant and the lessor had a right to make such agreement with reference to the rents by way of anticipation, or otherwise, as they pleased. While the precise question has never been decided, we think this result follows by necessary inference from the rules of law applicable, which have been heretofore set forth. The rule may seem unjust to the mortgagee. The answer is that it could have protected itself by requiring appropriate assignment and delivery of the lease with covenants.

For the reasons indicated the judgment of the trial court is affirmed.

*Affirmed.*

McSURELY, J., concurs.

O'CONNOR, P. J., specially concurring: I agree solely with the result reached.